[No. E013110. Fourth Dist., Div. Two. Feb. 10, 1994.]

PRESS-ENTERPRISE, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
DAVID LYNN SCOTT III, Real Party in Interest.

COUNSEL

Waters & Elwell and Sharon J. Waters for Petitioner.

No appearance for Respondent.

Alan C. Oberstein, Public Defender, and Toni Tweedle Healy, Deputy Public Defender, for Real Party in Interest.

OPINION

McKINSTER, J.—After we granted a peremptory writ of mandate in this matter directing the superior court to issue an order to release the grand jury transcripts in their entirety, the Supreme Court granted a petition for review and transferred the matter to us with directions to reconsider our order in light of *Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218, 1222-1223 [23 Cal.Rptr.2d 397, 859 P.2d 96]. Consequently, we calendared the matter for oral argument. We again conclude that petitioner, the Press-Enterprise, is entitled to the relief requested and grant its petition.

FACTS

It is alleged that real party in interest, David Lynn Scott III, is the "Ninja rapist" or "Ninja prowler" who committed several rapes and one murder in Moreno Valley and the Canyon Crest area of Riverside. On April 2, 1993, a twenty-count indictment was returned against him which included one count of murder with allegations of two special circumstances (Pen. Code, §§ 187/190.2, subd. (a)),[1] five counts of burglary (§ 459), two counts of attempted murder (§§ 664/187), and five counts of rape (§ 261, subd. (a)(2)).

Scott was arraigned and entered a not guilty plea on all counts. Subsequently, he made a motion pursuant to section 938.1 that the grand jury

---

[1] All other statutory references are to the Penal Code unless otherwise indicated.

transcripts remain sealed until the conclusion of trial, contending that due to the pretrial publicity the case has already received that there is a reasonable likelihood that his right to a fair and impartial trial would be prejudiced by the release of the transcripts.

The Press-Enterprise filed opposition to the motion, contending that the reasonable likelihood standard of section 938.1 is constitutionally infirm and that it must be replaced by the substantial probability of prejudice standard set forth by the United States Supreme Court in *Press-Enterprise Co.* v. *Superior Court* (1986) 478 U.S. 1 [92 L.Ed.2d 1, 106 S.Ct. 2735] (*Press-Enterprise II*). It argued that there was no basis under either standard to seal the grand jury transcript.

A hearing on this motion was held on May 14, 1993, at which the Press-Enterprise as well as the deputy district attorney and Scott's attorney made appearances. At the conclusion of this hearing the trial court determined that the applicable standard for ruling on this motion was "a reasonable likelihood that making all or any part of the transcript public may prejudice a defendant's right to a fair and impartial trial."

The court then set the matter for further hearing in order to review the grand jury transcripts and to consider specific objections by Scott to their release. At this subsequent hearing the court took judicial notice that as of May 1993, the Press-Enterprise had a daily circulation of 160,540 and a Sunday circulation of 168,705. The court noted that not all of its circulation is in the City of Riverside, but it did note that it prints seven different local editions and there are six or "seven possible local editions which they may change . . . in the B Section with local news akin to those areas."

A representative of the superior court executive office, Manuel R. Gonzalez, Jr., testified that the pool of jurors called to serve on criminal trials in the central division of the Riverside County Superior Court are drawn from the area west of Indio, including the cities of Riverside, Temecula, Hemet, Banning, Beaumont, Corona, Lake Elsinore, Sun City, and Moreno Valley. His office does not have any population figures for this area.

Although the People indicated that they intended to supply the court information regarding the population of this area, it does not appear that such information was ever made a part of the record. The court's personal estimates of the population of 3 largest cities were 218,000 to 220,000 for the city of Riverside; 110,000 to 118,000 for Moreno Valley; and, over 80,000 for Corona.

The court made the following findings: "FINDING No. I: Press-Enterprise and other weekly newspapers [e.g., Perris Progress] are newspapers of

general circulation, with circulation and readership in the cities of Western Riverside County, including Riverside, Corona, Moreno Valley, Hemet, Banning, Beaumont, Temecula, Murrieta, Lake Elsinore and Sun City, from which potential jurors are drawn and called for criminal cases heard at the Hall of Justice in Riverside. The Court takes judicial notice per Evidence Code Section 451, subdivision (f) of the Press Enterprise's circulation.

"FINDING No. II: The court cannot find that there is a 'reasonable likelihood' that release of the transcript, with the exception of those portions covered in Findings No. III, will prejudice the defendant's right to a fair trial.

"FINDING No. III: The Court finds that a portion of the Grand Jury testimony dealing with statements by the defendant to witnesses about a 'dream' and 'out of body experiences' are different from substantially all of the other testimony . . . because of their nature and because they are attributed to the defendant himself and may reasonably be considered as references to the alleged [murder] victim Brenda Kenny . . . ."

The court ordered that certain portions of the transcript remain sealed, finding that under both the "reasonable likelihood" and the "substantial probability" standard that these portions are so unusual and surrealistic that neither voir dire nor admonitions by the court to disregard those portions could reverse the potentially damaging and prejudicial effect they would have. Scott indicates that the portions of the transcript to remain sealed constitute about 3 percent of the 307-page transcript. In considering reasonable alternatives to sealing these portions of the transcripts, the court opined that "[i]t is highly unlikely that such knowledge or mindset could be set aside by voir dire or admonitions by the court to disregard things that prospective jurors have read about the incident of the alleged murder of Brenda Kenny. Such evidence is potentially very damaging and prejudicial to [Scott]."

The Press-Enterprise seeks review of the order that those specified portions of the grand jury transcript be sealed.

## DISCUSSION

Section 938.1 provides that once an indictment has been returned, the transcript of the grand jury proceedings shall be open to the public unless the court orders otherwise on its own motion or on motion of a party pending determination whether all or part of the transcript should be sealed. "If the court determines that there is a reasonable likelihood that making all or any

part of the transcript public may prejudice a defendant's right to a fair and impartial trial, that part of the transcript shall be sealed until the defendant's trial has been completed." (§ 938.1, subd. (b).)

As a preliminary matter, we point out that we do not have occasion in this case to decide whether the "reasonable likelihood" or "substantial probability" standard applies to the determination to seal all or part of the grand jury transcript.[2] This is a result of the trial court's ruling that the specified portions of the transcript that it ordered sealed were prejudicial under either the "reasonable likelihood" or "substantial probability" standard.

█ In reviewing the trial court's determination, we exercise our independent judgment. We have concluded that this is the appropriate standard of review by referring to the standard applicable to review of rulings on motions to change venue in criminal cases. Under section 1033 the court must order a change of venue when there is a reasonable likelihood that a fair and impartial trial cannot be had in the county. " 'A motion for change of venue or continuance shall be granted whenever it is determined that because of the dissemination of potentially prejudicial material, there is a reasonable likelihood that in the absence of such relief, a fair trial cannot be had.' " (*Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 383 [66 Cal.Rptr. 724, 438 P.2d 372].) On pretrial writ review of this ruling, the appellate court must make an independent evaluation of the circumstances to determine whether, in light of pretrial publicity, there is a reasonable likelihood of a fair trial in the county of original venue. (*Odle* v. *Superior Court* (1982) 32 Cal.3d 932, 937 [187 Cal.Rptr. 455, 654 P.2d 225].) We are reviewing a similar determination, i.e., the likelihood or probability that the release of the grand jury transcripts in their entirety will prejudice Scott's right to a fair trial, and we find that the independent evaluation is required.

█ Based on our review of the record, we cannot conclude that there is either a reasonable likelihood or a substantial probability that release of the entire grand jury transcript would prejudice Scott's right to a fair trial. In reaching this conclusion, we will accept the trial court's finding that a prospective juror who reads newspaper accounts regarding evidence of Scott's dreams and out-of-body experiences are likely to remember these reports and may even develop a preconception concerning his guilt or innocence. We cannot, however, conclude that release of this material would make it difficult to find 12 jurors capable of acting impartially. The factors relevant to our consideration include some of the same factors pertinent to a

---

[2]The "reasonable likelihood" standard places a lesser burden on the defendant than the "substantial probability" test. (See *Press-Enterprise II, supra,* 478 U.S. at p. 14 [92 L.Ed.2d at p. 14].)

change of venue motion: the size of the potential jury pool and the nature and extent of the publicity. (*Odle* v. *Superior Court, supra,* 32 Cal.3d 932, 938-942.) In this regard, we note first that the trial court failed to make a specific finding regarding the size of the potential jury pool, although its comments indicate that the pool exceeds by a significant margin the circulation of the Press-Enterprise. In turn, there was no showing that this case has generated public interest outside the local area of the cities of Riverside and Moreno Valley.[3] The trial court generally referred to the extensive press coverage of the homicide. The Press-Enterprise has published articles concerning this case and we can safely presume that it will continue to do so, including articles concerning the grand jury proceedings, but it is not even clear that the newspaper has published these articles in all or only some of its local editions. We also infer from the trial court's rulings that other local newspapers have covered this case but the trial court only refers to one other newspaper, Perris Progress, and does not indicate its circulation. The record does not make clear the nature and extent of coverage by other news media, such as radio or television.[4] Thus, although the trial court reasonably concluded that readers of the Press-Enterprise and other local newspapers would be in the jury pool, there is no basis for concluding that publicity of the contents of the entire grand jury transcript would be so extensive and widespread that it threatens to prejudice the entire jury pool so that twelve unbiased jurors could not be found. (Cf. *C.B.S.* v. *U.S. Dist. Ct. for C.D. of California* (9th Cir. 1983) 729 F.2d 1174, 1180 ["Thus, it is not enough that publicity might prejudice one directly exposed to it. If it is to be restrained, the publicity must threaten to prejudice the entire community so that twelve unbiased jurors can not be found."].)

A final factor that must be considered in ruling on a motion to seal grand jury transcripts is the existence of reasonable alternatives to sealing. Scott

---

[3]In support of the motion, Scott's attorney filed a declaration regarding the coverage in the Press-Enterprise of this matter. At the hearing, the court stated "we are talking probably about the most likely coverage of Riverside and Moreno Valley and in fact, Ms. Healy [Scott's attorney], you don't have editions in the declaration but much of this talks about Moreno Valley and I think we can assume from that that it would be appearing in both the Moreno Valley and the Riverside Metro editions. All of these articles were in The Press Enterprise that are attached to Ms. Healy's declaration filed May 14?"

Interestingly enough, Scott's attorney commented that she thought all of the articles about this case had appeared in the Temecula/Murrieta edition that she receives, but was unable to represent that for a fact.

The deputy district attorney countered that he had noticed a difference in The Press-Enterprise's coverage of crimes and that "crimes that occur in Temecula are not reported up here and vice versa." The trial court opined that it thought this observation is generally true, but suggested that that was not a significant factor because it assumed that "in any panel you are going to have jurors from Moreno Valley and Riverside. . . ."

[4]Scott's attorney apparently did indicate in this declaration that there had been some local television coverage of this case. A copy of this declaration is not contained in the record before us. At the hearing, the court and the parties discussed newspaper coverage of this case, particularly coverage in the Press-Enterprise.

has argued that there is no specific requirement in section 938.1 that the court consider reasonable alternatives. ██ ██ ██ We do not believe that a thorough evaluation of the reasonable likelihood or substantial probability of prejudice to a defendant's right to a fair trial can be made without considering reasonable alternatives that might adequately protect those rights.[5] Here, the trial court did, in fact, refer to reasonable alternatives to sealing the transcript, but we find its assessment of alternatives to be deficient. The court did not mention the possibility of a change of venue and, with regard to voir dire examination, commented that "[i]t is highly unlikely that such knowledge or mindset could be set aside by voir dire or admonitions by the court to disregard things that prospective jurors have read about the incident." Its finding discounts a court's ability through voir dire to identify and screen out "those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict." (*Press-Enterprise II, supra,* 478 U.S. at p. 15 [92 L.Ed.2d at p. 14].)

Scott contends that voir dire should not be considered a cure-all for adverse pretrial publicity. We agree, but we also point out that it is an alternative that cannot be lightly disregarded either. We reject Scott's assertion that voir dire is no longer an effective method to identify and screen out biased jurors because of the curtailment on counsel's conduct of voir dire examination as a result of the enactment of Code of Civil Procedure section 223. We will not presume that a trial court would refuse to allow examination of prospective jurors regarding their exposure to pretrial publicity where good cause has been shown for such questioning.

Accordingly, because there is not a reasonable likelihood or a substantial probability that Scott's right to a fair trial will be prejudiced, we conclude that the trial court erred in ordering that certain portions of the grand jury transcript be sealed pending conclusion of trial.

## DISPOSITION

Let a peremptory writ of mandate issue directing the Superior Court of Riverside County to set aside its order of June 10, 1993, and enter a new

---

[5]Moreover, consideration of reasonable alternatives is necessary in light of United States Supreme Court decisions providing that where a qualified First Amendment right of access attaches to a criminal proceeding, ". . . the proceeding shall be closed only if specific findings are made demonstrating that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." (*Press-Enterprise II, supra,* 478 U.S. 1, 14 [92 L.Ed.2d 1, 14].)

The grand jury proceedings themselves are not open to the public and no public right of access attaches, but once an indictment has been returned section 938.1, as distinguished from federal procedure, implicitly recognizes the public's qualified right of access to the record of those proceedings.

order that the transcripts of the grand jury proceedings in this matter be released to the public in their entirety.

Dabney, Acting P. J., and Hollenhorst, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied May 26, 1994. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.