[No. S072133. July 22, 1999.]

DAILY JOURNAL CORPORATION, Plaintiff and Respondent, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Defendant and
Respondent;
MERRILL LYNCH & CO., INC., et al., Real Parties in Interest and
Appellants;
ROBERT L. CITRON et al., Real Parties in Interest and Respondents.

**COUNSEL**

Law Offices of Paul S. Meyer, Paul S. Meyer; Morvillo, Abramowitz, Grand, Iason & Silberberg, Robert G. Morvillo, John T. Tigue, Jr.,

Richard D. Weinberg, Diana D. Parker; Morrison & Foerster and Dan Marmalefsky for Real Party in Interest and Appellant Merrill Lynch & Co., Inc.

William W. Larsen, Assistant District Attorney (Santa Clara); Michael D. Bradbury, Lawrence G. Brown and George M. Palmer for California District Attorneys Association as Amicus Curiae on behalf of Real Party in Interest and Appellant Merrill Lynch & Co., Inc.

Fried, Frank, Harris, Shriver & Jacobson, Audrey Strauss and Stephen D. Alexander for Real Parties in Interest and Appellants Grand Jury Witnesses John Does 1-28.

McCambridge, Deixler & Marmaro, Richard Marmaro, Michael A. Firestein and Jonathan E. Rich for Real Party in Interest and Appellant Grand Jury Witness John Doe II.

John T. Philipsborn for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Real Parties in Interest and Appellants Grand Jury Witnesses John Does 1-28.

Davis Wright Tremaine, Kelli L. Sager, Karen N. Fredericksen, Steven J. Westman and Rochelle L. Wilcox for Plaintiff and Respondent.

David W. Wiechert for Real Party in Interest and Respondent Robert L. Citron.

Hennigan, Mercer & Bennett, J. Michael Hennigan, Robert L. Palmer and Lawrence C. Jones for Real Party in Interest and Respondent Thomas W. Hayes.

No appearance for Defendant and Respondent Superior Court.

Michael R. Capizzi, District Attorney (Orange) and Gregory J. Robischon, Deputy District Attorney, as Amici Curiae.

## OPINION

**MOSK, J.**—As part of its investigation into the circumstances leading to Orange County's filing for bankruptcy in December 1994, the Orange County Grand Jury conducted a criminal investigation of Merrill Lynch & Co., Inc. (hereafter Merrill Lynch), in connection with its role in underwriting several debt offerings in Orange County during the summer of 1994. The

criminal investigation ended without indictments after a civil settlement between Merrill Lynch and the Orange County District Attorney. After the settlement, the Daily Journal Corporation and other media entities (hereafter, collectively, media entities) sought, and the superior court ordered, release to the public of all testimony and all documents presented to the grand jury in the course of the criminal investigation.

We granted review to determine whether the superior court, in the absence of a statutory provision for disclosure under these circumstances, properly released the grand jury materials to the public. As will appear, we conclude that it did not. Accordingly, we reverse the judgment of the Court of Appeal.

I

In December 1994, the County of Orange (hereafter the County) filed for bankruptcy protection after its pooled investment fund lost approximately $1.7 billion. Merrill Lynch was one of the investment banking firms from which the County purchased high-risk securities.

The Orange County District Attorney initiated grand jury criminal investigations into the events leading to the bankruptcy. "Phase one" and "phase two" targeted county officials involved in the transactions leading to the bankruptcy. The investigations resulted in criminal indictments or accusations against former county officials.

"Phase three" of the grand jury proceedings, at issue here, involved a criminal investigation into the conduct of Merrill Lynch as the underwriter of four debt offerings of the County in the summer of 1994. Testimony was taken and documents received from Merrill Lynch from July 1996 until June 1997. No civil grand jury investigation was conducted.[1]

In June 1997, before the grand jury began deliberations, the district attorney, with the agreement of the Attorney General, entered into a civil settlement with Merrill Lynch with regard to the County's "factual inquiry into Merrill Lynch's role in underwriting four debt offerings in 1994." Under the settlement, Merrill Lynch agreed to pay $30 million to the County's general fund, $3 million of which was allocated as reimbursement for the costs of the investigation by the district attorney and the Attorney General. Merrill Lynch also agreed to implement procedural changes and training modifications for its personnel involved in the debt offerings. The agreement

---

[1]The County commenced a civil action in federal court against Merrill Lynch and others seeking compensatory damages of $2 billion. That action ended in a settlement in 1998 in the amount of $420 million.

did not affect any currently pending litigation against Merrill Lynch by any other party, including the County. The County also agreed, in a separate letter agreement, that it would not prosecute Merrill Lynch or bring any criminal action against it in connection with the County's bankruptcy. The agreement was based, in part, on Merrill Lynch's representation that it was "not aware of any evidence that establishes that Merrill Lynch has committed a crime in connection with any transaction involving Orange County."[2]

Shortly thereafter, media entities submitted informal letter requests to the superior court seeking public release of all grand jury material. The superior court ordered a hearing, which was held in late July 1997.

In August 1997, the superior court ordered the district attorney to release all transcripts and documents from the grand jury's investigation of Merrill Lynch, based on the "public's right to information under the First Amendment and the California Constitution" and the court's "inherent equity, supervisory and administrative powers." Observing that the receipt of $3 million by the district attorney's office "seems self-serving" and "may create a conflict of interest," it ruled that disclosure was warranted by "the magnitude of the public's loss of funds and loss of confidence in government and financial markets" and "[e]ach and every citizen['s] . . . inalienable right to the disclosure of this information."

Merrill Lynch and grand jury witnesses—current and former employees of the company—appealed, arguing that there was no legal authority for the disclosure because the investigation ended without indictment, and that releasing the transcripts to the public would result in damage to reputation and business interests. Media entities and real party in interest Robert L. Citron, former Orange County Treasurer, urged that the superior court properly ordered release of the transcripts.

The Court of Appeal affirmed. It determined that, in the absence of any statutory provision limiting its authority, a superior court has inherent power to order the release of otherwise secret grand jury materials whenever the advantages gained by secrecy are outweighed by a public interest in disclosure. Applying that balancing test, it ruled that the considerations justifying secrecy were de minimis in this instance, because no one was exonerated and the grand jury was discharged. It also determined that there was a "very strong public policy in favor of preserving the public confidence in the

---

[2] The district attorney stated at a June 19, 1997, press conference: "We determined there was nothing prosecutable against any individuals [at Merrill Lynch]." With regard to Merrill Lynch itself, he stated that he "had made no determination as to whether or not there was a chargeable crime. . . . That was unnecessary based on the settlement of the case."

integrity of the grand jury system which can *only* be served by disclosure." Release of the grand jury materials at issue was stayed pending further appellate review.

We granted review and now reverse.

## II

Although the grand jury was originally derived from the common law, the California Legislature has codified extensive rules defining it and governing its formation and proceedings, including provisions for implementing the long-established tradition of grand jury secrecy. (See Pen. Code, pt. 2, tit. 4, chs. 1-3, §§ 888-939.91; see also Pen. Code, §§ 940-945.) The provisions include rules for excluding unauthorized persons from sessions and excluding all nonjurors from deliberations, and rules concerning disclosure.

The relevant statutes are as follows.

Penal Code section 939.1 provides that, at the written request of the grand jury and the Attorney General or the district attorney, a superior court may order public sessions of the grand jury when it involves matters affecting the public welfare. Otherwise, grand jury proceedings are conducted in secrecy. (Pen. Code, § 915 [grand jury "shall retire to a private room" to conduct inquiry into offenses].) Unless requested by the grand jury, "the judge of the court . . . shall not be present during the sessions of the grand jury." (*Id.*, § 934.) Apart from necessary and authorized appearances, as specified by statute, no person is permitted to be present during criminal sessions of the grand jury except the members and witnesses actually under examination. (*Id.*, § 939.) Deliberations of the grand jury are completely private; no person other than the grand jurors themselves may be present during "the expression of the opinions of the grand jurors, or the giving of their votes" on any criminal matter before them. (*Ibid.*)

Grand jurors must take an oath that they " 'will not disclose any evidence brought before the grand jury, nor anything which [they] or any other grand juror may say, nor the manner in which [they] or any other grand juror may have voted on any matter before the grand jury.' " (Pen. Code, § 911.) A grand juror who willfully discloses the fact of an information or indictment before the defendant has been arrested is guilty of a misdemeanor. (*Id.*, § 924.) Unless required by the court, grand jurors are not permitted to disclose any evidence adduced before the grand jury or anything said by a member of the grand jury. (*Id.*, § 924.1, subd. (a).) Moreover, each grand juror "shall keep secret" the deliberations and voting of the grand jury. (*Id.*,

§ 924.2.) A grand juror may not be questioned about any deliberations or vote relative to a matter pending before the grand jury, "except for a perjury of which he may have been guilty in making an accusation or giving testimony to his fellow jurors." (*Id.*, § 924.3.)

If an indictment is returned, Penal Code section 938.1 requires that a transcript of the grand jury proceedings be prepared and delivered to the district attorney and the defendant, and, unless the court orders otherwise, opened to the public 10 days thereafter.[3]

If no indictment is returned, there is no provision for the general release of testimony or evidence given in private sessions before the grand jury. Disclosure of some or all grand jury materials may, however, be ordered in connection with another proceeding under the following circumstances.

Penal Code section 924.2 provides that any court may require a grand juror to disclose the testimony of a witness examined by the grand jury for the purpose of ascertaining whether it is consistent with testimony given before the court, i.e., for impeachment, or when such witness is formally charged with the crime of perjury. Penal Code section 924.6 authorizes the court that impaneled the grand jury to disclose to the prosecutor and the defendant *in any pending or subsequent criminal proceeding* "all or part" of the testimony it finds, after in camera hearing, both relevant and apparently admissible. Penal Code section 924.4 requires a grand jury—or, if it is no longer impaneled, the presiding judge of the superior court—to make transcripts of testimony reported during any session available, upon request, to the *succeeding grand jury*. But it may not provide "any information or evidence that relates to a criminal investigation or that could form part or all of the basis for issuance of an indictment." (*Ibid.*)[4]

---

[3]Penal Code section 938 requires the appointment of a stenographic reporter whenever criminal causes are investigated before the grand jury. The reporter must report the testimony in shorthand, but is required to transcribe the shorthand only in cases when an indictment is returned. (*Ibid.*) Penal Code section 938.1 in relevant part provides: "(a) If an indictment has been found or accusation presented against a defendant, [the] stenographic reporter shall certify and deliver to the county clerk an original transcription of his shorthand notes and a copy thereof and as many additional copies as there are defendants . . . . The county clerk shall file the original of the transcript, deliver a copy of the transcript to the district attorney . . . and deliver a copy of such transcript to each such defendant or his attorney. . . . [¶] (b) The transcript shall not be open to the public until 10 days after its delivery to the defendant or his attorney. Thereafter the transcript shall be open to the public unless the court orders otherwise . . . . If the court determines that there is a reasonable likelihood that making all or any part of the transcript public may prejudice a defendant's right to a fair and impartial trial, that part of the transcript shall be sealed until the defendant's trial has been completed."

[4]In addition, Penal Code section 939.91 authorizes the court that impaneled the grand jury to order it to release a declaration or report exonerating a person investigated by the grand

More recently, in 1998, the Legislature enacted Penal Code section 929, which provides, with regard to *civil* grand jury investigations, "[a]s to any matter not subject to privilege," and subject to judicial approval, that "a grand jury may make available to the public part or all of the evidentiary material, findings, and other information relied upon by, or presented to, a grand jury for its final report in any *civil* grand jury investigation provided that the name of any person, or facts that lead to the identity of any person who provided information to the grand jury, shall not be released." (Italics added.) No similar provision authorizes public release of evidentiary material in *criminal* grand jury investigations.

### III

 The question before us is whether the superior court in this matter had authority to disclose grand jury materials to the public when none of the foregoing statutes was applicable. The Court of Appeal determined that the answer is yes, based on the superior court's inherent powers, including its power to supervise grand jury proceedings. We conclude that the answer is no; the court's authority in this area is purely statutory.

The Court of Appeal purported to find no statutes or cases that would prohibit the disclosure of criminal grand jury materials in this matter. Concluding that the Legislature "seems not to have addressed the question," it ruled that, in effect, whatever exercise of authority to disclose grand jury materials has not been expressly prohibited by the Legislature is permitted. We disagree.

 As indicated by the foregoing summary of the relevant provisions under the Penal Code regarding grand jury proceedings, the Legislature has addressed the question of grand jury secrecy and disclosure of grand jury materials extensively and comprehensively in the Penal Code. Viewing that statutory scheme as a whole, it appears that the Legislature intended disclosure of grand jury materials to be strictly limited. As we explained more than a century ago: "In this State the whole matter [of disclosing grand jury proceedings] is regulated by statute." (*Ex Parte Sontag* (1884) 64 Cal. 525, 527 [2 P. 402].) By enacting the statutes governing the "exceptional cases" (*ibid.*) in which a court may order disclosure of grand jury materials,

---

jury (*id.*, subd. (a)) or stating that a person was called only as a witness (*id.*, subd. (b)). Unless requested to do so, the grand jury is under no statutory duty to exonerate a person investigated.

the Legislature has, in effect, occupied the field; absent express legislative authorization, a court may not require disclosure.[5]

■ Thus, in one of our earliest cases in point, *People* v. *Tinder* (1862) 19 Cal. 539, we held that testimony received by the grand jury could not be disclosed unless expressly permitted by the Legislature. Observing that secrecy was the rule under the common law, we concluded that "though [the statutory law] does not in express terms prohibit the disclosure of the testimony taken, it does so impliedly. It designates the cases in which a grand juror may be required to disclose the testimony of a witness [citation]; and thus in effect declares that such disclosure shall not be required in any other cases." (*Id.* at p. 545.)

In *Ex Parte Sontag, supra,* 64 Cal. at page 528, we held that a court could not require a grand juror to disclose any matter transpiring in the jury room unless directly authorized to do so by statute. We declined to "overrule the many grave objections to a procedure . . . which may interfere with the complete freedom of exposure of alleged offenses which it is the design of the institution of grand juries to secure, and conflict with other principles of public policy which are subserved by keeping inviolate the secrets of the grand jury room." (*Ibid.*)

Similarly, in *Allen* v. *Payne* (1934) 1 Cal.2d 607, 608 [36 P.2d 614], we looked to the legislative history of the grand jury, which revealed "a practice of defining and delimiting its powers . . . by express statutory grant." In such an area, we declined to "resort to the very vague justification of 'inherent' or 'implied' powers." (*Ibid.*) *Allen* involved the question whether the grand jury had the "inherent" power to employ persons to investigate crime. Pointing to express provisions for hiring interpreters, auditors, stenographic reporters, and special counsel, we observed: "It seems clear from these instances that the [L]egislature has considered the employment of persons by the grand jury a matter to be governed by statute. In none of these cases would there have been any necessity for a grant of authority if there existed the implied power [to hire special investigators] which is claimed for the body by petitioner." (*Id.* at pp. 608-609.)

More recently, in *McClatchy Newspapers* v. *Superior Court* (1988) 44 Cal.3d 1162, 1180 [245 Cal.Rptr. 774, 751 P.2d 1329], we reaffirmed:

---

[5]The California Constitution, as adopted in 1879, left to the Legislature the adoption of specific rules for the operation of the grand jury. It provided: "Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate, or by indictment, with or without such examination and commitment, as may be prescribed by law." (Cal. Const., art. I, former § 8.) As we explained in *Fitts* v. *Superior Court* (1936) 6 Cal.2d 230, 241 [57 P.2d 510]: "The [constitutional] convention of 1879 . . . by failing to make further provisions as to the grand jury left to the [L]egislature all questions affecting the grand jury not expressly covered by the Constitution."

"[G]rand jury secrecy is the rule and openness the exception, permitted only when specifically authorized by statute." We noted that "[t]he importance of secrecy is well established in the context of the grand jury's criminal indictment function." (*Id.* at p. 1175.)

 *McClatchy* addressed the question whether a superior court had authority to suppress a proposed final report by a grand jury that included certain records and documents gathered during a secret civil "watchdog" investigation. We concluded that the answer is yes: the superior court may restrain unlawful grand jury reporting, i.e., reporting that goes beyond the grand jury's "statutorily enumerated powers." (*McClatchy Newspapers* v. *Superior Court, supra,* 44 Cal.3d at p. 1180.) In the absence of explicit statutory authority for disclosing the evidentiary materials to the public, we held that the superior court acted properly in sealing evidentiary materials the grand jury improperly sought to disclose. (*Id.* at p. 1184.)

Emphasizing "the significance of secrecy to the grand jury's effective operation," we stated that "[t]he secrecy of all grand jury proceedings is 'deeply rooted in our traditions . . . .' " (*McClatchy Newspapers* v. *Superior Court, supra,* 44 Cal.3d at p. 1173.) Thus, since the adoption of a secrecy requirement in 17th century England to prevent the escape of offenders, reduce the influence of the monarch, and guarantee the impartiality of the grand jury, "for the most part, grand jury proceedings . . . have been closed to the public and records of such proceedings have been kept from the public eye." (*Ibid.*) We observed that the intention of our Legislature "to incorporate this well-established heritage of secrecy into the present grand jury system is plainly and amply shown in the governing provisions of the Penal Code." (*Ibid.*)

 We identified the interests served by " 'the strong historic policy of preserving grand jury secrecy' " as follows: " 'First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There would also be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.' " (*McClatchy Newspapers* v. *Superior Court, supra,* 44 Cal.3d at pp. 1174-1175, quoting *Douglas Oil Co.* v. *Petrol Stops Northwest* (1979) 441 U.S. 211, 219 [99 S.Ct. 1667, 1673, 60 L.Ed.2d 156].) We also noted Wigmore's

summary of the reasons for grand jury secrecy, including the points that "complainants and witnesses are protected from the possible adverse consequences of disclosing their testimony" and that "the innocent accused are protected from the harm to their reputations which might result from disclosure." (*McClatchy Newspapers* v. *Superior Court, supra,* 44 Cal.3d at p. 1175, fn. 6, citing 8 Wigmore, Evidence (McNaughton ed. 1961) § 2360, pp. 734-735.)

We stressed that the reasons for preserving grand jury testimony continue even after the grand jury has been discharged. "[I]t can hardly be disputed that the encouragement of candid testimony and the protection of witnesses and their reputations are best achieved when secrecy is maintained even after the conclusion of a grand jury investigation. 'The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow.' " (*McClatchy Newspapers* v. *Superior Court, supra,* 44 Cal.3d at p. 1175.)

We explained, for example, that adverse comments by witnesses appearing in secret before the grand jury "could greatly damage the reputation of [a] coworker or supervisor. In such a case, public inspection of the testimony concerning these individuals can engender a kind of nonjudicial punishment against which persons harmed would lack any real defense or adequate forum for response." (*McClatchy Newspapers* v. *Superior Court, supra,* 44 Cal.3d at p. 1177.) The same considerations do not, by contrast, adhere when there has been an indictment, because it is but " 'the first step in a long process in which the accused may seek vindication through exercise of the right to a public trial, to a jury, to counsel, to confrontation of witnesses against him and, if convicted, to an appeal.' " (*Id.* at p. 1176.) Although *McClatchy* involved disclosure of testimony before a civil grand jury acting in a public watchdog capacity, the reasons identified therein for preserving grand jury testimony apply equally to testimony before a criminal grand jury.

*McClatchy* underscored that the Legislature, "[r]ecognizing the important purposes served by grand jury secrecy," enumerated only three situations when disclosure of grand jury testimony is permitted: first, as ordered by the court for purposes of impeachment or when relevant to a charge of perjury (Pen. Code, § 924.2); second, when an indictment is returned (*id.,* § 938.1); and third, when requested by a succeeding grand jury (*id.,* § 924.4). (*McClatchy Newspapers* v. *Superior Court, supra,* 44 Cal.3d at p. 1178.)[6]

*McClatchy* concluded that the Legislature's express authorization of grand jury disclosure only in limited situations strongly indicates the lack of

---

[6]To this list should be added a fourth, more limited, situation provided for by Penal Code section 924.6: disclosure to a defendant and the prosecutor in connection with a pending or

general authority, observing that "[a]ttempts to exercise powers other than those expressly conferred by statute have been consistently rebuffed." (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at p. 1179; see also *Non-Disclosure of Grand Jury Transcript of Testimony*, 53 Ops.Cal.Atty.Gen. 200, 201 (1970) [if the grand jury does not return a formal charge, "the statutes require that the secrecy of testimony elicited before it be preserved"]; *Grand Jury Witnesses*, 66 Ops.Cal.Atty.Gen. 85, 90 (1983) ["Of course if no indictment or accusation is made the transcript of the grand jury proceeding would never be made public."].)[7]

For these reasons, *McClatchy* concluded that the grand jury has no "intrinsic" power to disclose grand jury testimony on its own initiative. (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at pp. 1178-1179.) Those same reasons persuade us that a *superior court*, similarly, lacks "inherent" power to do so. To paraphrase *McClatchy*: Broad though they are, the superior court's powers to disclose grand jury testimony are only those which the Legislature has deemed appropriate. (See *id.* at p. 1179.) Otherwise, if superior courts could disclose materials based only on their inherent powers, the statutory rules governing disclosure of grand jury testimony would be swallowed up in that large exception.

As we held in *McClatchy*, the superior court must exercise its supervisory "responsibility to prohibit and restrain grand jury action which goes beyond its statutorily enumerated powers." (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at p. 1180.) But, as we have also emphasized, the supervisory role of the superior court is sharply restricted. "[T]he scope of the superior court's reviewing role is strictly confined to ensuring that reports do not extend beyond legal boundaries of the grand jury's broad reportorial power. . . . The court's sole function in this realm lies in its power to prevent the official filing of an illegal report . . . ." (*People* v. *Superior Court* (*1973 Grand Jury*) (1975) 13 Cal.3d 430, 434 [119 Cal.Rptr. 193, 531 P.2d 761].) Under the legislative scheme, once it has impaneled and charged the grand jury, the superior court's powers are narrowly circumscribed; it has very limited authority to review the grand jury's work and

---

subsequent criminal proceeding, as ordered by the court that impaneled the grand jury, if it determines, following an in camera hearing, that testimony of a witness before the grand jury "is relevant, and appears to be admissible."

[7]The legislative history of Penal Code section 924.4 also indicates that, as recently as 1975, the Legislature assumed that disclosure was prohibited unless expressly authorized by statute. Thus, an analysis prepared by the Assembly Committee on Criminal Justice, in describing the effect of the amendment that added Penal Code section 924.4, explained that, under then current law, "if the grand jury does not indict, a transcript of the proceedings cannot be made public." (Assem. Com. on Crim. Justice, Analysis of Assem. Bill No. 284 (1975-1976 Reg. Sess.) Feb. 12, 1975, p. 1.)

none to dictate its functions. (See Pen. Code, §§ 915-944.) Thus, contrary to the Court of Appeal, we conclude that whatever exercise of authority to disclose grand jury materials has not been expressly permitted by the Legislature is prohibited.

We find additional support for our conclusion in the Legislature's enactment, after *McClatchy*, of Penal Code section 929, which, as discussed, authorizes the release of certain raw evidentiary materials in a final report by a civil grand jury, subject to court approval, "provided that the name of any person, or facts that lead to the identity of any person who provided information to the grand jury, shall not be released." By preserving the confidentiality of witnesses, the provision reaffirms the general legislative concern to safeguard grand jury secrecy. More significantly, with regard to the issue presented here, the Legislature confined disclosure to *civil* grand juries reporting on the results of public watchdog investigations; it has not provided for court approval of the general release of evidentiary materials after a *criminal* grand jury investigation, evincing a legislative intent to preclude such court-approved disclosure in a criminal grand jury context.[8]

## IV

■■■ The Court of Appeal reasoned that the grand jury, a judicial body convened by the superior court, remains subject to its supervision and to its inherent power to control litigation before it. It concluded that such inherent power, which is not confined by or dependent on statute, confers unfettered authority on a superior court to release grand jury materials as a part of its administrative role over the grand jury. It thus attempted to draw an analogy to instances in which courts have exercised inherent power to create new forms of procedure when rights would otherwise be lost or the court would be unable to function.

We disagree. This is not a case in which the exercise of inherent authority is justified, in the absence of any previously established rule, by the superior court's need to control its own procedures. The Court of Appeal's reliance on *Walker* v. *Superior Court* (1991) 53 Cal.3d 257 [279 Cal.Rptr. 576, 807 P.2d 418] and *Cottle* v. *Superior Court* (1992) 3 Cal.App.4th 1367 [5 Cal.Rptr.2d 882]—involving the inherent power of the court to devise new

---

[8]Penal Code section 939.1, which provides that grand jury sessions may be conducted publicly in specified matters, specifically applies to criminal as well as civil investigations. Thus, under the provision, "[t]he grand jury may find indictments based wholly or partially upon the evidence introduced at such public session." Amicus curiae California District Attorneys Association argues persuasively that authorizing release of grand jury materials in this matter, which was not conducted publicly, would permit an "end run" around the requirements of Penal Code section 939.1.

procedures concerning hearings and evidence to help ensure efficient administration of the courts—is misplaced. Nor do we agree with the Court of Appeal that the superior court here was in a position analogous to that of the court in *James H.* v. *Superior Court* (1978) 77 Cal.App.3d 169, 175 [143 Cal.Rptr. 398], which ruled that a juvenile court had inherent power to order a competency hearing in the absence of any statutory provision providing therefor.

The Court of Appeal aimed somewhat closer to the mark when it pointed to cases involving inherent authority of a superior court to address problems specifically arising from administration of the grand jury, i.e., *People* v. *Superior Court* (*1973 Grand Jury*), *supra*, 13 Cal.3d 430, and *McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d 1162, itself. But those precedents, too, are distinguishable. In the former case, the Superior Court of Santa Barbara County refused to accept a grand jury report that it concluded had exceeded the grand jury's authority. We held that such limited review was "implicit in the statutory scheme confining the grand jury's investigatory authority to specifically enumerated subjects." (13 Cal.3d at p. 433.) As discussed, however, we stressed that the superior court's "reviewing role is strictly confined": "The court's sole function in this realm lies in its power to prevent the official filing of an illegal report." (*Id.* at p. 434.) *McClatchy* involved the exercise of inherent supervisory authority to *suppress* release of secret grand jury materials because, again, such disclosure went beyond the grand jury's statutorily enumerated powers. (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at p. 1180.) The analogy to the present situation does not withstand scrutiny. The superior court was not called upon in this matter to exercise its limited supervisory authority to prevent the violation of any statutory inhibition.

Rather, it is significant that *no California case* over the last century since the California grand jury was constitutionally established has permitted transcripts of testimony before a criminal grand jury to be disclosed to the public based only on a court's inherent power or its supervisory role over the grand jury.

We thus reject the conclusion that the superior court had authority under California law to disclose all grand jury materials pursuant to its supervisory role over grand jury proceedings. As urged by amici curiae California District Attorneys Association and California Attorneys for Criminal Justice, there is no basis for allowing an exercise of inherent judicial power by the superior court to circumvent existing legislation in this area, when such

power is not required for the accomplishment of a constitutionally defined judicial function.[9]

The Court of Appeal and media entities also refer to numerous cases from the federal courts and other states in support of their argument that the superior court should be accorded broad discretion to balance the general rule of grand jury secrecy against the "public's right to disclosure." The cases offer little guidance. All are from jurisdictions, unlike California, that have expressly delegated authority to the courts to exercise discretion regarding disclosure of grand jury testimony, e.g., for impeachment or in cases of perjury. Significantly, *none* authorizes a court to release grand jury transcripts to the general public in circumstances like those at issue here. Rather, they involve ad hoc rulings on whether there was a particularized need to disclose limited portions of grand jury testimony in connection with criminal or civil litigation or an official investigation—most of which would also have been subject to disclosure *by statute* in California.[10]

Media entities also contend that concerns about the impact of disclosure on the effective functioning of the grand jury are "no longer of any practical consequence in California" in light of the requirement, under Penal Code section 938.1, that grand jury transcripts are open to the public after an indictment. They urge that we should agree with the conclusion of the

[9]We also disagree with media entities that this matter involves any right codified in Code of Civil Procedure section 187, which provides that when jurisdiction is conferred on a court by the Constitution or by statute, "all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

[10]See, e.g., *In re Jessup's Petition* (1957) 50 Del. 530, 543 [136 A.2d 207, 215] (concluding that court has discretionary power under common law to release minutes of grand jury proceedings when justice demands it, but observing that "a general release of Grand Jury testimony has rarely, if ever, been granted"); *State* v. *Hartfield* (1981) 290 Or. 583, 592 [624 P.2d 588, 593] (providing for common law exceptions to the grand jury secrecy requirement to permit defendant to test a witness's credibility, but stating that "[w]e do not . . . condone wholesale orders for disclosure of grand jury recordings"); *Mannon* v. *Frick* (1956) 365 Mo. 1203, 1207-1208 [295 S.W.2d 158, 163] (authorizing disclosure of the grand jury's identification of copies of two items of evidence subsequently lost, along with the grand jury testimony of a witness that the signature on one item was genuine, and observing generally that "disclosure may be required either in the general public interest or in the protection of private rights"); *State* v. *Tillett* (Fla.Dist.Ct.App. 1959) 111 So.2d 716, 723 (state statute permits disclosure of grand jury testimony as exception to the secrecy rule "in the furtherance of justice"); *People* v. *Di Napoli* (1970) 27 N.Y.2d 229, 234 [316 N.Y.S.2d 622, 625, 265 N.E.2d 449, 451] (observing that, under state law, it is "[f]irmly settled" that "determination of the question whether disclosure [of grand jury materials] should be permitted is addressed to, and rests in, the trial judge's discretion"); see also *U.S. Industries, Inc.* v. *United States District Court* (9th Cir. 1965) 345 F.2d 18, 21 (violation of traditional grand jury secrecy should be permitted under Federal Rules of Criminal Procedure, rule 6(e) (18 U.S.C.), upon the showing of particularized and compelling need).

superior court and Court of Appeal that the privacy interests at issue were de minimis because witnesses in criminal grand jury proceedings no longer have any reasonable expectation that their testimony will not be disclosed. The Court of Appeal, similarly, opined that it is "hardly a secret" that most criminal grand jury investigations end in indictment and grand jury witnesses already know it is likely that their testimony will become public record. On this basis it discounts any assurances of secrecy that might have been made to the witnesses in this matter.

We disagree that the Legislature's enactment of Penal Code section 938.1 was intended to abrogate traditional concerns regarding disclosure of grand jury testimony. Nor are such concerns inconsequential. In the absence of an indictment, without the protections of the court process, the innocently accused and even witnesses are more vulnerable to a risk of adverse consequences ranging from reputational injury to retaliation. As in *McClatchy*, we remain persuaded of the continued importance of maintaining the heritage of grand jury secrecy when there has not been an indictment, in order to preserve the effectiveness of the grand jury process, as well as to protect witnesses against the adverse consequences, including damage to reputation, of disclosing their testimony. (*McClatchy Newspapers* v. *Superior Court*, *supra*, 44 Cal.3d at p. 1175 & fn. 6.)

Media entities also contend that the policies behind the constitutional and common law rights of public access to pretrial proceedings and records that exist with respect to preliminary hearings also support a conclusion that once a grand jury investigation is complete, its records should be subject to public scrutiny. They are unpersuasive. Transcripts of grand jury testimony, unlike testimony before a court in pretrial proceedings, are not public records. As stated in *McClatchy*, "the important public interests requiring [the grand jury's] institutional secrecy persuade us that the Legislature must have intended the grand jury to be . . . exempted from the [California Public Records] Act's provisions." (*McClatchy Newspapers* v. *Superior Court*, *supra*, 44 Cal.3d at p. 1183; see also *Press-Enterprise Co.* v. *Superior Court* (1994) 22 Cal.App.4th 498, 505, fn. 5 [27 Cal.Rptr.2d 708] ["grand jury proceedings themselves are not open to the public and no public right of access attaches, but once an indictment has been returned section 938.1 . . . implicitly recognizes the public's qualified right of access to the record of those proceedings"].)

Nor is there authority for "freewheeling disclosure" by the superior court based on the public's " 'right to know.' " (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at p. 1184.) As we explained in *McClatchy*: "The people, acting through their elected representatives or through exercise of

the initiative power, may authorize the disclosure attempted here, but they have not done so to date . . . ." (*Ibid.*)

Media entities also urge that, in any event, the particular reputational interests at issue here are undeserving of special protection because, although not indicted, neither Merrill Lynch nor its employees were "exonerated." As noted, however, grand juries are not required to exonerate the targets of their investigation unless specifically requested to do so pursuant to Penal Code section 939.91. More to the point, Penal Code section 938.1 requires disclosure when there is an indictment; it is *not* triggered when there is no indictment. There is no provision requiring disclosure to the public of grand jury testimony that turns on whether a subject of criminal grand jury investigation was exonerated. Nor does the legislative scheme permit a court to disclose grand jury testimony, absent express statutory authority, because it concludes that the privacy interests of a particular target or witness are de minimis.

Finally, the Court of Appeal concluded that permitting disclosure in this matter, which is "so clearly sui generis," would not provide future support to those who would seek disclosure in other matters. It viewed the policy concerns favoring disclosure as particularly strong in this case because of what it referred to as the "corrosive effect" of a public perception that the target of a grand jury investigation "could buy its way out" through a preindictment settlement. Similarly, media entities argue that disclosing transcripts and evidentiary material in these "unique" circumstances will have little impact on California law regarding grand jury secrecy because it is unlikely that future criminal grand jury investigations about issues of great public interest will be resolved before indictment as part of a monetary settlement.

Although we agree that a perception that the target of a criminal grand jury investigation could avoid indictment by "buying its way out" would be destructive, we are confident that adequate means to address such a concern are available. To the extent the superior court and the Court of Appeal justified the release of grand jury materials in order to permit judicial and public oversight of the district attorney's exercise of investigative and charging discretion in this matter, we note that such oversight is a matter reserved to the Attorney General and to the Governor, who has constitutional and statutory authority to oversee the Attorney General. (Cal. Const., art. V, § 13; see also Gov. Code, §§ 12010, 12550.)

Moreover, we doubt that the rule adopted by the Court of Appeal could be so narrowly circumscribed. Its effect would, instead, be immediate and

far-reaching: whenever the media, or any member of the public, requested disclosure in a matter of public interest, a court would have authority to pierce the veil of grand jury secrecy based on a simple balancing test. Indeed, as described by media entities, the rule would require that *"absent extraordinary circumstances not present here*, once a grand jury investigation is complete, its records should, at the presiding court's discretion, be subject to public scrutiny." (Italics added.) Their request for so fundamental a change in existing law is more appropriately addressed to the Legislature.

## V

For the foregoing reasons, we reverse the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.