[No. B176587. Second Dist., Div. Six. Apr. 27, 2005.]

THE PEOPLE, Plaintiff, v.
MICHAEL JOSEPH JACKSON, Defendant and Respondent;
NBC UNIVERSAL, INC., et al., Movants and Appellants;
THE SUPERIOR COURT OF SANTA BARBARA COUNTY, Respondent.

1010

COUNSEL

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., William E. Thomson, Julian Poon and Michael H. Dore for Movants and Appellants.

Collins, Mesereau, Reddock & Yu, Thomas A. Mesereau, Jr., Susan C. Yu; Sanger & Swysen, Robert M. Sanger, Stephen K. Dunkle; Oxman & Jaroscak and Brian Oxman for Defendant and Respondent.

Stephen Shane Stark, County Counsel, and Stephen D. Underwood, Assistant County Counsel, for Respondent.

## Opinion

**GILBERT, P. J.**—Defendant Michael Jackson was indicted on various charges including child molestation. The trial court ordered the grand jury transcript, the indictment, search warrant affidavits and other court records sealed.

Appellants NBC Universal, Inc., et al. (collectively NBC) appeal the trial court's denial of its motions to unseal records. NBC contends the order violates the First Amendment.

At the time of oral argument, most, if not all, of the information NBC sought was available to the public. Some information had been unsealed by the trial judge. Apparently most, if not all, of the information had been "leaked" and was available to hundreds of millions of people through the Internet.

We did not glean these facts from the record. We do not debate the notion held by some that appellate judges live in ivory towers. Such habitations, however, lack what is in abundant supply at sea level—sand in which to bury our heads. Even the most reclusive know that the Michael Jackson prosecution is discussed in many quarters: lively debate at a dinner party, idle conversation in the locker room, or a quick chat at the supermarket checkout counter. We have done our best to limit our exposure to public discourse about the case. However sincere our attempts to deflect conversation to other topics, we could not help but be aware that the information NBC seeks, it has. (Evid. Code, § 452, subds. (g) & (h).)

We therefore asked counsel whether a judicial opinion on its appeal would be academic, if not moot. Counsel responded that an opinion that considers the appeal at the time the motions to unseal were made would establish useful precedent. Bearing in mind the sui generis nature of this case, we leave that assessment to readers, present and future. We therefore journey in an imaginary judicial time machine to last year. We temporarily disarm our powers of hindsight so that our perception of events at the time the motions were made will not be distorted.

We conclude that Judge Rodney Melville carefully balanced the defendant's right to a fair trial and the public's right to know. He displayed sensitivity and insight into these issues, and he made rulings that gave him the flexibility to maintain that balance in an ever-changing environment.

We affirm the orders to seal, with the exception of the indictment. The trial court properly sealed portions of the indictment, including redaction of the names of unindicted purported coconspirators. We order the remainder of the indictment unsealed.

*FACTS*

On November 18, 2003, the Santa Barbara County Sheriff's Department executed a search warrant at Jackson's Neverland Ranch and other locations. The trial court initially sealed the warrant return, the inventory of items seized, and the supporting affidavit (warrant materials) for 45 days and then ordered they remain sealed "until, at a minimum, the arraignment in this matter." On January 7, 2004, NBC filed a motion to unseal the warrant materials. Jackson was arraigned on January 16. The court heard arguments on NBC's motion the same day.

On January 23, 2004, the court issued findings and orders supporting sealing of the search warrant materials pursuant to California Rules of Court, rule 243.1.[1] The court found that sealing was necessary to protect the privacy of minors. Some statements in the affidavit were made by a minor and his family concerning events of a sexual nature. Some statements were made during counseling, and others contained details of an earlier investigation of Jackson's alleged molestation of another minor.

The court also found that sealing was necessary because of widespread media and public interest. The court stated: "Michael Jackson is a figure recognized around the world and the events surrounding execution of the search warrant, his arrest, and even the file-stamping of the felony complaint have received widespread publicity. There will inevitably be even greater interest in the details of the claimed offenses. This presents a significant challenge to the court with responsibility for insuring that the trial is fair both for the defense and the prosecution. Widespread dissemination of evidence, which may or may not be admissible at trial, can only complicate the process of selecting an unbiased jury. The combination of sensitive information

---

[1] California Rules of Court, rule 243.1, Sealed Records, provides in pertinent part:

"(d) [Express factual findings required to seal records] The court may order that a record be filed under seal only if it expressly finds facts that establish:

"(1) There exists an overriding interest that overcomes the right of public access to the record;

"(2) The overriding interest supports sealing the record;

"(3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed;

"(4) The proposed sealing is narrowly tailored; and '

"(5) No less restrictive means exist to achieve the overriding interest.

"(e) [Content and scope of the order]

"(1) An order sealing the record must (i) specifically set forth the facts that support the findings and (ii) direct the sealing of only those documents and pages, or, if reasonably practicable, portions of those documents and pages, that contain the material that needs to be placed under seal. All other portions of each document or page must be included in the public file."

involving minors with the notoriety of a celebrity defendant produces circumstances where without protective measures by the court both the privacy interests of the minors and the public interest on all sides of the issue for a fair trial are imminently threatened with substantial prejudice."

The court found that no redaction of the warrant affidavit was possible without violating the privacy of the minors and prejudicing the jury pool. "Any disclosure in advance of admission of the evidence in a court proceeding burdens the privacy of the minors whose statements are made public, and in the intense environment surrounding the present case immediately threatens the integrity of the jury pool." The court concluded that other alternatives such as cautionary jury instructions would be ineffective because the jury had not yet been chosen and sealing was necessary to avoid prejudicial information from being made public.

The trial court also sealed the transcript of the grand jury proceedings and portions of the 10-count indictment. It redacted from the indictment the name of the minor, descriptions of overt acts relating to a conspiracy charge and the names of alleged unindicted coconspirators.

The court stated: "At the same time, the Court desires that public access be maximized within the limitations of the concern for an unbiased jury pool and a fair trial. All of the charges and sentencing considerations, the findings of the Grand Jury, and all other portions of the indictment, beyond those indicated and the signature of the foreperson, have been made available, remain unsealed, and are posted on the Court's Internet media site."

Thereafter, sheriff's deputies executed approximately 65 additional search warrants. The court ordered these search warrants sealed because "the affidavits contain confidential information, premature disclosure of which may prejudice an ongoing investigation and the constitutional right of both parties to a fair trial."

On June 29, 2004, Jackson filed a motion to dismiss the indictment pursuant to Penal Code section 995 on the grounds of prosecutorial misconduct.[2] The court released a redacted version of the motion. The district attorney filed its opposition to the motion under seal. The court released a redacted version of the opposition to the motion and Jackson's reply in support of the motion. It ultimately denied the motion.

---

[2] All further statutory references are to the Penal Code unless otherwise stated.

The court issued findings and an order regarding the sealing motions, oppositions and replies. It reasoned: "Each of these documents in their unredacted form identifies potential witnesses and specifies items of evidence the admissibility of which has yet to be determined by the Court and provides the identity of the minor complaining witness or his family. In particular, the Motion to Set Aside the Indictment argues that the indictment should be set aside, in part, based on the insufficiency of the evidence and on the inadmissibility of the evidence. . . . [¶] In this case, protection of the Defendant's right to a fair trial and protection of the identity of the minor complaining witness and his family overcomes the right of public access to the record. A substantial probability exists that those interests will be prejudiced if the record is not sealed as requested. The intensity of the media coverage in this case is unprecedented. Each court hearing is thoroughly reported and exhaustively analyzed by the media. It is substantially probable that if the evidence expected to be given at trial were to be released pretrial, it would be similarly reported and analyzed. The sealing order is necessary to maintain the integrity of the available jury pool by limiting exposure to the expected evidence and testimony pretrial and to prevent exposure to inadmissible items of evidence. The Court has consistently held that because of the pervasive media coverage in this case, the Defendant's right to a fair trial outweighs public access. Those findings are relevant here and incorporated by reference. . . . [¶] There are no less restrictive means to protect those interests. The extraordinary circumstances present in this case overcome the presumption that cautionary admonitions and instructions to the jury pool would have a curative effect. It is far more desirable to avoid the prejudice in the first instance than to hope to identify unaffected jurors later. [¶] The Court acknowledges that its order must be narrowly tailored to accommodate the maximum public disclosure. Each document has been redacted and released in its redacted form . . . ."

Throughout the pretrial proceedings, the court held several in camera hearings and ordered the transcripts of the hearings sealed, releasing only summary minutes of the hearings.

NBC filed numerous motions opposing the sealing of judicial records and in camera hearings. NBC appeals from all orders issued by the trial court adverse to it. In its briefs, however, NBC limits its arguments to the orders denying full access to the indictment, Jackson's motion to set aside the indictment and related documents, and the search warrant affidavit.

NBC contends the trial court made insufficient findings under California Rules of Court, rule 243.1, to support sealing these documents and violated the public's right to access to court files guaranteed by the First Amendment. County counsel and Jackson argue that the court's findings properly balance

the public's right to access against Jackson's right to a fair trial, the minor's right to privacy and the integrity of the ongoing law enforcement investigation.

## DISCUSSION

### Standard of Review

██ However convoluted the facts, or complex the issues, the standard of review is the compass that guides the appellate court to its decision. It defines and limits the course the court follows in arriving at its destination. Deviations from the path, whether it be one most or least traveled, leave writer and reader lost in the wilderness.[3]

The parties disagree as to the standard of review. Jackson asserts the proper standard is abuse of discretion, relying on *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292 [116 Cal.Rptr.2d 833]. NBC argues the standard is de novo, relying on *Bose Corp. v. Consumers Union of U.S., Inc.* (1984) 466 U.S. 485 [80 L.Ed.2d 502, 104 S.Ct. 1949].

██ If the standard of review is abuse of discretion, the appellate court examines the ruling of the trial court and asks whether it exceeds the bounds of reason or is arbitrary, whimsical or capricious. *(People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125 [36 Cal.Rptr.2d 235, 885 P.2d 1]; *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339].) This standard involves abundant deference to the trial court's rulings.

██ When the question to be decided is one of law, the appellate court examines the question de novo, or independently. *(Bose Corp. v. Consumers Union of U.S., Inc., supra,* 466 U.S. 485.) That is not to say the appellate court disregards the trial court's rationale for its decision. It often is most helpful and illustrates the important role trial courts play in shaping the law. We are not averse to using all the help we can get.

As straightforward as the standards of review may appear, they can be more confusing than enlightening in some applications. In their briefs, counsel post signs designating the path the appellate court should follow. However well-intentioned counsel may be, these signs can be misleading.

Some cases define an error of law as an abuse of discretion. Take injunctions for example. *(DVD Copy Control Assn., Inc. v Bunner* (2003) 31 Cal.4th 864, 890 [4 Cal.Rptr.3d 69, 75 P.3d 1] [trial court abuses its

---

[3] Whether Robert Frost took the road less traveled is an open question.

discretion if injunction improper under California's trade secret law]; *New Tech Developments v. Bank of Nova Scotia* (1987) 191 Cal.App.3d 1065, 1073 [236 Cal.Rptr. 746] [no abuse of discretion in dissolving preliminary injunction because its issuance not contrary to law].)

The Legislature has not always been helpful. Code of Civil Procedure section 1094.5, subdivision (b) defines abuse of discretion in mandamus cases: "if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." Under the California Environmental Quality Act, the standard of review by which the appellate court reviews the sufficiency of an agency's environmental impact report is abuse of discretion. "Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination is not supported by substantial evidence. . . . ([Pub. Resources Code,] § 21168.5.)" (*Dry Creek Citizens Coalition v. County of Tulare* (1999) 70 Cal.App.4th 20, 26 [82 Cal.Rptr.2d 398].) Seems like an amalgam.

No wonder we concluded in *Ziesmer v. Superior Court* (2003) 107 Cal.App.4th 360, 363 [132 Cal.Rptr.2d 130], that "[t]he abuse of discretion standard is itself much abused."

The foregoing perhaps explains why in many appeals the most contested issue is the standard of review, the route that often leads to the determination of substantive issues. The deferential standards of substantial evidence or abuse of discretion are often championed by parties wishing to affirm the trial court's decision. But what is the best-traveled road is often in the mind of the beholder. This case is no exception.

*Providian* construed California Rules of Court, rules 243.1 and 243.2 and concluded that "these rules vest a trial court with a considerable amount of discretion in deciding whether to seal or unseal portions of a judicial record." (*In re Providian Credit Card Cases, supra*, 96 Cal.App.4th at p. 295.)

If abuse of discretion is the standard of review, this case is easily resolved. The trial court gave detailed and reasoned rulings disclosing its rationale and its concerns balancing the competing interests of Jackson to have a fair trial and the public's right to be apprised of judicial proceedings. Judge Melville's rulings reflect careful and reasoned analysis and insight into the important constitutional principles involved. His rulings are anything but arbitrary, capricious or whimsical.

■ In *Bose*, the Supreme Court explained that "in cases raising First Amendment issues [it has] repeatedly held that an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.' " (*Bose Corp. v. Consumers Union of U.S., Inc.*, *supra*, 466 U.S. at p. 499.)

*Providian* is the only published decision analyzing California Rules of Court, rule 243.1. Unlike the instant case, *Providian* reviewed an order to unseal documents relating to trade secrets. In dicta, *Providian* acknowledged that review of an order to unseal is unlike an order to seal. "Were we reviewing an order to *seal*, we would proceed in two stages. First we would examine the express findings of fact required by rule 243.1(d) to determine if they are supported by substantial evidence. The examination for substantial evidence is made on the basis of the entire record. [Citations.] Next, we would decide whether, in light of and on the basis of these findings, the trial court abused its discretion in ordering a record sealed. Here, however, we review the decision to *unseal* parts of a record already filed under seal. Motions to unseal records are governed by rule 243.2(h), which does not impose a requirement of express findings." (*In re Providian Credit Card Cases, supra*, 96 Cal.App.4th at pp. 301–302.)

■ When the issue is substantial evidence, the reviewing court asks whether the evidence supports the court's findings. Such evidence must be reasonable in nature, credible, and of solid value. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 51 [26 Cal.Rptr.2d 834, 865 P.2d 633].) In criminal cases, " ' "an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find [the elements of the crime] beyond a reasonable doubt." ' (*People v. Bolden* (2002) 29 Cal.4th 515, 553 [127 Cal.Rptr.2d 802, 58 P.3d 931] . . . .)" (*In re George T.* (2004) 33 Cal.4th 620, 630–631 [16 Cal.Rptr.3d 61, 93 P.3d 1007].) *Providian* would thus combine two highly deferential standards in reviewing an order to seal.

*Providian's* rationale arguably is persuasive in applying an abuse of discretion standard of review when deciding the propriety of an order to unseal documents relating to trade secrets. We doubt whether it is the appropriate standard when sealing the type of documents involved in the instant case.

■ Our Supreme Court, relying on *Bose,* concluded that cases implicating First Amendment rights are subject to independent review. "[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law." (*In re George T., supra,* 33 Cal.4th at p. 634.) This standard requires the court to make an independent examination of the whole record. (*Ibid.*)

■ "Independent review is not the equivalent of de novo review 'in which a reviewing court makes an original appraisal of all the evidence to decide whether or not it believes' the outcome should have been different. (*Bose, supra,* 466 U.S. at p. 514, fn. 31.) Because the trier of fact is in a superior position to observe the demeanor of witnesses, credibility determinations are not subject to independent review, nor are findings of fact that are not relevant to the First Amendment issue. (*Id.* at pp. 499–500; *Harte-Hanks* [*Communications v. Connaughton* (1989)] 491 U.S. [657,] 688 [105 L.Ed.2d 562, 109 S.Ct. 2678].) As noted above, under the substantial evidence standard, the question is whether any rational trier of fact could find the legal elements satisfied beyond a reasonable doubt, whereas under independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law." (*In re George T., supra,* 33 Cal.4th at p. 634.)

Here, the trial court did not take testimony. There is no credibility of witnesses to determine. It considered the court record that we review. In these circumstances, independent review is the equivalent of de novo review, the standard we use in deciding this appeal.

### General Principles

■ "[F]ree speech and fair trials are two of the most cherished policies of our civilization, and it [is] a trying task to choose between them." (*Bridges v. California* (1941) 314 U.S. 252, 260 [86 L.Ed. 192, 62 S.Ct. 190].) On the one hand, the First Amendment recognizes " 'a general right to inspect and copy public records and documents, including judicial documents and records.' " (*United States v. Inzunza* (S.D.Cal. 2004) 303 F.Supp.2d 1041, 1044, quoting *Nixon v. Warner Communications, Inc.* (1978) 435 U.S. 589, 597 [55 L.Ed.2d 570, 98 S.Ct. 1306].) On the other hand, a trial judge has "an affirmative duty to control adverse publicity to protect the right of an accused to a fair trial." (*In re Willon* (1996) 47 Cal.App.4th 1080, 1093 [55 Cal.Rptr.2d 245], citing *Sheppard v. Maxwell* (1966) 384 U.S. 333 [16 L.Ed.2d 600, 86 S.Ct. 1507].)

■ In the performance of that duty, a trial judge may remove from public scrutiny a recording containing data or material that, if publicized prior to trial, could result in publicity so inherently prejudicial as to endanger a fair trial. (*Craemer v. Superior Court* (1968) 265 Cal.App.2d 216, 225 [71 Cal.Rptr. 193]; see also *Press-Enterprise Co. v. Superior Court* (1984) 464 U.S. 501, 508 [78 L.Ed.2d 629, 104 S.Ct. 819] ["No right ranks higher than the right of the accused to a fair trial"]; see also *Gentile v. State Bar of Nevada* (1991) 501 U.S. 1030, 1075 [115 L.Ed.2d 888, 111 S.Ct. 2720] ["Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right"].) Nonetheless, "pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial." (*Nebraska Press Assn. v. Stuart* (1976) 427 U.S. 539, 565 [49 L.Ed.2d 683, 96 S.Ct. 2791].)

■ Our Supreme Court set forth the test to be used in balancing these two precious rights. In *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178 [86 Cal.Rptr.2d 778, 980 P.2d 337] (*NBC Subsidiary*), the court exhaustively reviewed United States Supreme Court and Federal Circuit Court of Appeals opinions that speak to the issue of public access in criminal and civil cases. The court concluded that most judicial proceedings and records are subject to a presumption of openness. When the presumption applies, the public has a qualified right of access. That right may be denied only if the court, after notice and hearing, makes four supported findings: "(i) there exists an overriding . . . interest supporting closure and/or sealing; (ii) there is a substantial probability . . . that the interest will be prejudiced absent closure and/or sealing; (iii) the proposed closure and/or sealing is narrowly tailored to serve the overriding interest; and (iv) there is no less restrictive means of achieving the overriding interest." (*Id.* at p. 1218, fns. omitted.) These principles are codified in California Rules of Court, rule 243.1.

■ We have reviewed the entire record de novo and conclude that the order sealing the warrant materials meets the standards set forth in *NBC Subsidiary* and California Rules of Court, rule 243.1. We disagree that sealing the indictment was necessary to protect any overriding interest.

*The Search Warrant Affidavit Overriding Interest Supporting*
*Sealing*

■ Section 1534, subdivision (a) provides that the documents and records in an executed search warrant "shall be open to the public as a judicial record." (But see *People v. Hobbs* (1994) 7 Cal.4th 948, 962 [30 Cal.Rptr.2d 651, 873 P.2d 1246] ["codified privileges and decisional rules

together comprise an exception to the statutory requirement that the contents of a search warrant, including any supporting affidavits setting forth the facts establishing probable cause for the search, become a public record once the warrant is executed"].)

The 82-page search warrant affidavit contains graphic and detailed descriptions of Jackson's alleged sexual misconduct with two minors, one in the present case, and one in a prior case settled 10 years ago.

To release the details of the alleged crimes to the public would likely be embarrassing, if not devastating, to the minors. It also would result in public dissemination of evidence, which may or may not be admissible at the trial. The privacy of minors and the protection of a defendant from the public dissemination of inaccurate information or inadmissible evidence are two interests that may override the public's qualified right of access. *NBC Subsidiary* holds that "protecting minor victims of sex crimes from the trauma and embarrassment of public scrutiny" could justify limiting public access to court documents. (*NBC Subsidiary, supra,* 20 Cal.4th at pp. 1206–1207.) We have reviewed the affidavit and agree with the trial court that sealing was necessary to protect these overriding interests.

NBC argues that the privacy interests of the minors do not trump the public's First Amendment right to access, citing *Copley Press, Inc. v. Superior Court* (1998) 63 Cal.App.4th 367 [74 Cal.Rptr.2d 69]. In *Copley,* the media asserted that a student's privacy interest in the amount of a settlement did not outweigh the public's right to know every detail about criminal activity at a public school. The appellate court agreed, finding no compelling reason existed to conceal the amount of damages in a settlement between a minor sexual assault victim and the school's insurer.

Unlike *Copley,* this is a criminal action involving accusations of sexual relationships with a minor. *Copley* is a civil action in which the minor defendant asserted a privacy interest in the amount of a monetary settlement.

Moreover, the conduct alleged here is such that public disclosure prior to trial could lead to moral judgments and public outrage, severely prejudicing Jackson's right to a fair trial. (See *NBC Subsidiary, supra,* 20 Cal.4th at p. 1222 ["protection of the underlying . . . litigants' right to a fair trial is[,] in the abstract, an overriding interest, and that the First Amendment . . . in an appropriate case, permit[s] closure to protect that interest"].)

The prosecution's investigation did not end with Jackson's indictment. Following the indictment, more than 65 additional search warrants were executed. We conclude the warrant affidavit was properly sealed to achieve the government's compelling interest in the protection of its continuing investigation. (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1215, fn. 34; *United States v. Valenti* (11th Cir. 1993) 987 F.2d 708, 714; and see *Times Mirror Co. v. United States* (9th Cir. 1989) 873 F.2d 1210, 1213 [recognizing the importance of guarding the secrecy of criminal investigations and stating "complete openness . . . may, for example, frustrate criminal investigations and thereby jeopardize the integrity of the search for truth that is so critical to the fair administration of justice"].)

These circumstances reflect an overriding interest justifying a sealing order. NBC argues that the trial court placed undue emphasis on Jackson's celebrity status and that this factor cannot be used to justify sealing. NBC relies on *ABC, Inc. v. Stewart* (2d Cir. 2004) 360 F.3d 90, a case that has superficial similarities to the instant case. Each defendant is well known to the general public and each case involves allegations of criminal conduct. But Martha Stewart committed a white-collar crime. Here we have child molestation charges. The difference between giving false information in a stock trading investigation and allegedly molesting a child is self-evident. The possibility of prejudice arising from disclosure of the details of a crime that the public has little knowledge of or interest in can hardly be compared to the extreme prejudice which would result from disclosing details of alleged acts of child molestation, a crime that everyone understands and condemns. Here, it is the combination of celebrity status, the crimes alleged and the ongoing criminal investigation that justifies sealing.

 While commercial harm or embarrassment of a party does not alone justify sealing the entire record of a case (*Wilson v. American Motors Corp.* (11th Cir. 1985) 759 F.2d 1568, 1570–1571), it is appropriate to seal certain records when those particular records contain highly sensitive and potentially embarrassing personal information about individuals. (See *Doe v. Blue Cross & Blue Shield United of Wisconsin* (7th Cir. 1997) 112 F.3d 869, 872 [acknowledging that it may have been appropriate for the district court to seal psychiatric records that though pertinent to the suit would have been "highly embarrassing to the average person"].)

*Prejudice Absent Sealing*

The second prong of the *NBC Subsidiary* test requires the court to find that there is a substantial probability that the interests will be prejudiced absent closure and/or sealing. "We enter into this analysis keeping in mind that assessing the likely effect of an event by its nature calls for speculation. (See *People v. Cooper* [1991] 53 Cal.3d 771, 839 [281 Cal.Rptr. 90, 809 P.2d 865]; see also *Nebraska Press Assn. v. Stuart, supra,* 427 U.S. at p. 563 [finding that publicity could affect prospective jurors was necessarily speculative, since it dealt with 'factors unknown and unknowable.'].)" (*In re Willon, supra,* 47 Cal.App.4th at p. 1100.)

▮ *In re Willon* suggests that in assessing whether there is a substantial probability that pretrial publicity would impair a defendant's right to a fair trial, relevant factors include: (1) the nature and extent of the publicity, (2) the amount of information already in the public domain, (3) the existence of prejudicial information not yet released to the public, (4) the size of the county from which prospective jurors will be drawn, and (5) whether potential voir dire or other measures could eliminate any prejudice caused by the publicity. (*In re Willon, supra,* 47 Cal.App.4th at p. 1099; see also *Nebraska Press Assn. v. Stuart, supra,* 427 U.S. at p. 554 ["The capacity of the jury eventually impaneled to decide the case fairly is influenced by the tone and extent of the publicity"].)

The details of the crimes alleged are highly prejudicial. This, combined with the celebrity of the defendant, has created a torrent of pretrial publicity. Experience teaches that any new development in this case, real or imaginary, leads to intense media scrutiny. News sources from around the world—newspapers, magazines, radio, television and the Internet—are saturated with information (or disinformation) about the case. Unless one is a hermit, such information is hard to avoid. It is unlikely that potential jurors would not be influenced by exposure to the information NBC seeks.

County counsel points out that the judicial district from which the jury will be selected has approximately 200,000 people. A substantially lesser number are eligible for jury duty and available from which to choose an unbiased jury pool.

*A Narrowly Tailored Order?*

The third prong requires that the proposed closure and/or sealing be narrowly tailored. NBC contends the trial court's order that all court documents be filed under seal creates a "presumption of secrecy." NBC, however, does not suggest, and we cannot devise, a workable alternative.

The trial court and the parties made Herculean efforts to redact documents so that the less prejudicial aspects of the case could be revealed to the public. But redacting individual facts from the search warrant affidavit is impossible. Benign information is inextricably intertwined with prejudicial information.

Revealing such material could compromise the prosecution's ongoing investigation. We agree with the court's rationale in *Crowe v. County of San Diego* (S.D.Cal. 2002) 210 F.Supp.2d 1189, 1195–1196: "[T]he investigation of criminal activity has long involved imparting sensitive information to judicial officers who have respected the confidentialities involved. The process of disclosing information to a neutral magistrate to obtain a search warrant, therefore, has always been considered an extension of the criminal investigation itself. It follows that information disclosed to the magistrate in support of the warrant request is entitled to the same confidentiality accorded other aspects of the criminal investigation. Both the magistrate in granting the original sealing order and the district court in reviewing such orders have necessarily been highly deferential to the government's determination that a given investigation requires secrecy and that warrant materials be kept under seal." (Italics omitted.) Disclosure of any portion of the sealed warrant materials could reveal the focus of the investigation and potentially compromise its progress. (See *In re 2 Sealed Search Warrants* (Del. 1997) 710 A.2d 202, 212.)

### *Less Restricted Means and Overriding Interest*

 The fourth prong requires that there be no less restrictive means of achieving the overriding interest. "[T]he burden of demonstrating reasonable alternatives to closure rests with the press." (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1218, fn. 40.) The less restrictive means proposed by NBC is the release of all unredacted documents except for the name of the minor victim and jury instructions and admonitions. NBC correctly points out the court in *NBC Subsidiary* said that jury admonitions and instructions are usually sufficient to keep jurors from considering inadmissible evidence and that it is a presumptively reasonable alternative to closure. But the court also said: "In a given case, the presumption that [jury] admonitions and instructions are adequate may be rebutted by the exceptionally prejudicial nature of evidence to be received . . . and the potential intensity of media coverage." (*Id.* at p. 1224.) This is such a case. Understandably, the public views child molestation as a heinous crime. The disclosure of the accusations prior to trial could likely lead to a public condemnation of the defendant before he even

appears in court. The potential jurors would be hard pressed to ignore such pretrial disclosure.

### The Motion to Set Aside the Indictment and Related Documents

We have found no California cases specifically discussing whether materials relating to a motion to dismiss an indictment are presumptively open. However, we interpret the broad language of *NBC Subsidiary* and the United States Supreme Court precedents cited by our Supreme Court as requiring access absent express findings that support denial of access.

As the motion to set aside the indictment necessarily is based on the grand jury proceedings, the trial court sealed the grand jury transcript on the same grounds it used for sealing the search warrant affidavit.

■ The Legislature has provided that grand jury materials be made public where, as here, an indictment has issued. Although grand jury proceedings are not open to the public, once an indictment has been returned, " 'section 938.1 . . . implicitly recognizes the public's qualified right of access to the record of those proceedings.' " (*Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1132 [86 Cal.Rptr.2d 623, 979 P.2d 982], quoting *Press-Enterprise v. Superior Court* (1994) 22 Cal.App.4th 498, 505, fn. 5 [27 Cal.Rptr.2d 708].)

We have reviewed the 1,900-page transcript as well as the briefs of the parties in their unredacted form. As discussed above, these materials contain information irrelevant to the present case, which, if disclosed, could be highly prejudicial to Jackson. (See, e.g., *Rosato v. Superior Court* (1975) 51 Cal.App.3d 190, 209 [124 Cal.Rptr. 427] [proper to seal grand jury transcript when material in transcript was highly prejudicial and of questionable admissibility and pretrial disclosure would endanger the defendant's right to a fair trial by making it difficult to impanel an unbiased jury at the time of the sealing order].) In addition, the transcript contains a substantial amount of testimony involving criminal allegations against numerous unindicted purported coconspirators, whose privacy interests also would be violated. (See *United States v. Smith* (3rd Cir. 1985) 776 F.2d 1104 [affirming district court's sealing of a bill of particulars that contained the names of unnamed coconspirators, where revealing the names of the coconspirators would have been career threatening].)

Attempts to redact portions of these documents would yield, at best, unintelligible paragraphs. In our review of an earlier writ petition seeking to unseal the grand jury transcript, we took a random section of the transcript and redacted the names of the unindicted purported coconspirators. Here is what our efforts produced:

"X testified that before X left Neverland this time, X asked Y, Z, and A, whether they were monitoring X's telephone calls. They all told X they were not. At some point during this time, X called B and told B something about [redaction] that D would not know anything about. Z than [sic] came storming into the room yelling at X, and relating some information back to X that X had given to B."

The long list of dramatis personae appearing in this case will result in the use of triple-lettered names. The alternative use of "blank" instead of letters would only heighten unintelligibility.

### The Indictment

The indictment summarizes the alleged acts that form the basis for the criminal charges against Jackson. Although unsealing it has the potential to prejudice Jackson, we believe that the general nature of the information contained in the indictment may be cured through appropriate admonishments to the jury.

As NBC points out, the prosecutor revealed details of the overt acts at an open hearing on Jackson's motion to dismiss the indictment. The prosecutor's statements at the hearing did reveal details not contained in the redacted version of the indictment. Under these circumstances, there is no reason to keep the indictment sealed. (See *NBC Subsidiary, supra,* 20 Cal.4th at p. 1223, fn. 47 [where sensitive details of a case already revealed to the public, no substantial probability that closure or sealing would prevent prejudice].)

### CONCLUSION

We do not take lightly the public's right of access to court proceedings and the interests served by public access. But here our de novo review compels our agreement with the trial court's findings. Sealing the search warrant affidavit and the motion to set aside the indictment avoids impairment of Jackson's right to a fair trial, protects the privacy interests of minors and unindicted purported coconspirators, and protects the ongoing law enforcement investigation.

The sealing orders of the trial court relating to the search warrant affidavit and motion to dismiss "reflect awareness of the tensions between the need to protect the accused as fully as possible and the need to restrict publication as little as possible" and are affirmed. (*Nebraska Press Assn. v. Stuart, supra,* 427 U.S. at p. 566.) The sealing order relating to the indictment is reversed and the cause remanded to the trial court with instructions to release the indictment, redacting only the names of the unindicted coconspirators. The parties shall bear their own costs.

Coffee, J., and Perren, J., concurred.