[No. A117202. First Dist., Div. One. Aug. 24, 2007.]

ALBERTO ALVAREZ, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
SAN JOSE MERCURY NEWS, INC., et al., Real Parties in Interest.

644

 

## Counsel

Charles Robinson, Eric Liberman and John Halley for Petitioner.

Stephen Wagstaffe for Respondent.

Edmund G. Brown, Jr., Attorney General, and Ronald S. Matthias, Assistant Attorney General, for Real Party in Interest Office of the Attorney General.

Sheppard, Mullin, Richter & Hampton, James M. Chadwick and Guylyn R. Cummins for Real Party in Interest San Jose Mercury News, Inc.

## Opinion

**MARCHIANO, P. J.**—Penal Code section 938.1, subdivision (b),[1] provides that grand jury transcripts shall be open to the public after an indictment issues unless the court finds a "reasonable likelihood" that their release will prejudice the defendant's right to a fair trial. (§ 938.1, subd. (b).) The First Amendment of the United States Constitution guarantees the press and the public a right of access to certain judicial proceedings and precludes their closure unless the court finds that access will create a "substantial probability" of prejudice and finds there are no less restrictive measures that would ameliorate the harm. (*Press-Enterprise Co. v. Superior Court* (1986) 478 U.S. 1, 13–14 [92 L.Ed.2d 1, 106 S.Ct. 2735] (*Press-Enterprise II*); *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1181 [86 Cal.Rptr.2d 778, 980 P.2d 337] (*NBC Subsidiary*).)

The "reasonable likelihood" standard of section 938.1 places a lesser burden on a defendant seeking to prevent dissemination of grand jury transcripts than would the "substantial probability" standard that applies to public access cases under the First Amendment. (*Press-Enterprise v. Superior Court* (1994) 22 Cal.App.4th 498, 503, fn. 2 [27 Cal.Rptr.2d 708] (*Press-Enterprise III*).) As we explain below, we conclude the First Amendment right of access does not extend to postindictment grand jury transcripts at a section 938.1 hearing, and that a defendant seeking to seal such transcripts pending the completion of trial need only establish prejudice under the lesser "reasonable likelihood" standard of section 938.1.

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

## I. BACKGROUND

Officer Richard May of the East Palo Alto Police Department was shot and killed on January 7, 2006. Defendant was arrested as a suspect a few days later. Local news media covered the case extensively, and articles about the crime, the victim and defendant appeared both in print and on the Internet.

On August 25, 2006, defendant was indicted by a grand jury and charged with first degree murder with special circumstances, namely, that a peace officer was killed in the line of duty. (§§ 187, subd. (a), 190.2, subds. (a)(7), (b) & (c).) The indictment also charged defendant as a felon in possession of a firearm (§ 12021, subd. (a)) and alleged that he had personally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)), that he had committed the murder while on parole (§ 1203.085, subd. (b)), that he was ineligible for probation by virtue of a prior felony conviction (§ 1203, subd. (e)(4)) and that he had previously served a prison term for a felony offense (§ 667.5, subd. (b)).

After the indictment issued, the trial court ordered that the grand jury transcripts would be provided to the district attorney and defendant, but would otherwise remain under seal pending further order. Defendant filed a motion to seal the transcripts until the completion of his trial pursuant to section 938.1, subdivision (b). San Jose Mercury News, Inc. (Mercury News), opposed the motion, and defendant filed a reply challenging the paper's standing to participate. Mercury News filed a separate motion to unseal the grand jury transcripts. The district attorney took no position as to whether the transcripts should be released.

A hearing was held at which defendant presented the testimony of two expert witnesses in support of his request that the transcripts remain sealed. Lewis Leader, a former newspaper reporter and editor, was offered as an expert on journalistic practices regarding stories about crimes and the courts. Edward Bronson, a social scientist with a degree in law, discussed the effects of pretrial publicity on the fairness of a trial, as well as the efficacy of voir dire in preventing prejudice. Both opined that the amount of media coverage on the case had been extensive, that the victim had been portrayed positively throughout, that defendant had been portrayed very negatively, and that release of the grand jury transcripts would reignite public interest in the case and increase media coverage.

The trial court granted Mercury News's motion to unseal after redacting irrelevant and unduly prejudicial material. It concluded that the public and press have a qualified First Amendment right of access to grand jury transcripts after an indictment has issued, therefore, federal constitutional law required release of the transcripts unless doing so would create a substantial probability of prejudice, which defendant had not demonstrated. The court rejected defendant's argument that he need only show a reasonable likelihood of prejudice as provided under section 938.1, subdivision (b): "[T]he statutory language in section 938.1(b) is unconstitutional to the extent that it ignores the constitutional dimension of this problem."

Defendant filed a petition for writ of mandate and/or prohibition in this court seeking an order that the grand jury transcripts remain sealed. Mercury News filed informal opposition. We summarily denied the petition. The Supreme Court granted review and transferred the matter back to this court with directions to issue an order to show cause why the relief sought by defendant should not be granted. We set a date for filing a return, continued the trial court's stay of its order unsealing the grand jury transcripts, and calendared the matter for oral argument.

## II. DISCUSSION

Defendant contends the order unsealing the grand jury transcripts must be vacated because the trial court imposed a higher burden of proof upon him than required under California law when it considered whether the pretrial release of the transcripts would create a "substantial probability" of prejudice. He argues that under section 938.1, subdivision (b), he needed only to prove a "reasonable likelihood" of prejudice for the transcripts to remain sealed pending the completion of his trial. Defendant also argues that Mercury News lacked standing to participate in the hearing below. We conclude that Mercury News had standing to participate in the hearing, but agree with defendant that the court should have applied the reasonable likelihood standard of section 938.1, subdivision (b).

### A. *Standing*

Defendant contends the district attorney was the only party other than himself entitled to participate in the hearing to determine whether the transcripts should remain sealed. We disagree. At the time of the hearing, the grand jury transcripts had been ordered sealed pending further order by the court. Mercury News was entitled to seek inspection of the transcripts and

properly did so by filing a motion to unseal. (Cal. Rules of Court, rule 2.551(h)(2) ["A party or member of the public may move, apply, or petition . . . to unseal a record."]; *Craemer v. Superior Court* (1968) 265 Cal.App.2d 216, 218, fn. 1 [71 Cal.Rptr. 193] [reporter had standing to seek writ of mandate to inspect sealed grand jury transcripts].)

■ Defendant acknowledges that a member of the press is entitled to challenge an order sealing grand jury transcripts, but suggests the court should have first ruled on his motion to seal, and then separately addressed Mercury News's motion to unseal the transcripts in the event his motion was granted. Bifurcating the hearing in this manner would have elevated form over substance when the court's ultimate task was to determine whether release of the transcripts would prejudice defendant's fair trial rights. The trial court did not err when it considered the motions to seal and unseal in a single hearing.

## B. *The Public's Right to Grand Jury Transcripts Under Section 938.1*

California has provided for a secret grand jury since the inception of its criminal justice system. (*People v. Superior Court (Mouchaourab)* (2000) 78 Cal.App.4th 403, 414 [92 Cal.Rptr.2d 829].) But unlike many other jurisdictions, this state permits the release of grand jury transcripts to the public once an indictment has been returned. (See Judicial Council of Cal., Rep. to Governor and Leg. (1970–1974) Sealing of Criminal Transcripts Before Trial, p. 21 ["California is one of the few states that has rejected the traditional secrecy of grand jury transcripts."]; contrast Fed. Rules Crim.Proc., rule 6(e), 18 U.S.C.)

"The California Constitution, as adopted in 1879, left to the Legislature the adoption of specific rules for the operation of the grand jury. It provided: 'Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate, or by indictment, with or without such examination and commitment, as may be prescribed by law.' (Cal. Const., art. I, former § 8.) As we explained in *Fitts v. Superior Court* (1936) 6 Cal.2d 230, 241 [57 P.2d 510]: 'The [constitutional] convention of 1879 . . . by failing to make further provisions as to the grand jury left to the [L]egislature all questions affecting the grand jury not expressly covered by the Constitution.' " (*Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1125, fn. 5 [86 Cal.Rptr.2d 623, 979 P.2d 982].)

As early as 1933, former section 925 required that a reporter transcribe grand jury proceedings for delivery to the county clerk and further provided, "The county clerk shall not exhibit said transcript to any person other than the district attorney nor divulge any of the contents thereof until after the defendant is in custody." (Stats. 1933, ch. 763, § 2, p. 2022.) Implicit in this statute was the county clerk's authority to release the transcripts to the public after the defendant was taken into custody, though it is not clear from case law or legislative history whether this was done as a matter of routine.

Section 925 was replaced by sections 938 and 938.1 in 1959. Section 938.1 continued the practice of allowing release of the grand jury transcripts after the defendant was indicted and taken into custody: "If an indictment has been found or [an] accusation presented against a defendant, [the] stenographic reporter shall certify and file with the county clerk an original transcription of his shorthand notes . . . . The county clerk shall deliver the original of the transcript so filed with him to the district attorney immediately upon his receipt thereof and shall deliver a copy of such transcript upon each such defendant or his attorney. . . . The county clerk shall not exhibit the transcript to any person other than the district attorney nor divulge any of its contents until after the defendant is in custody." (Stats. 1959, ch. 501, § 2, pp. 2451–2452.)

In *Craemer v. Superior Court, supra,* 265 Cal.App.2d 216, this court considered the circumstances under which grand jury transcripts could be withheld from the public once an indictment issued. We granted a petition for writ of mandate filed by a newspaper reporter who sought to inspect grand jury transcripts that had been sealed by the trial judge in an effort to minimize pretrial publicity. (*Id.* at pp. 218, 227.) We explained, "In the case before us there is no statutory provision restricting the inspection of the grand jury transcripts after the indictment and apprehension of the defendants. Therefore, the actions of the grand jury and the record of its proceedings should not be unnecessarily, and without reason, withheld from public scrutiny after the indictment and apprehension of the defendants unless a countervailing public policy requires such a restriction." (*Id.* at p. 223.)

We noted in *Craemer* that a trial court may limit disclosure of grand jury transcripts in cases where doing so is necessary to limit pretrial publicity that could impair a defendant's right to a fair trial. (See *Craemer v. Superior Court, supra,* 265 Cal.App.2d at pp. 223–225.) The effect of the trial court's order in that case, however, was to "permanently deny the right of public inspection of the grand jury records in question. We think that such an order is

unreasonable since the only justifiable purpose of the order is to prevent public knowledge of inadmissible matter prior to the completion of the defendant's trial. To extend the order beyond this justifiable purpose in the present case does violence to the general policy of this state that public records and documents be kept open for public inspection in order to prevent secrecy in public affairs. . . . [¶] [The trial judge's] indicated purpose in the present case can be accomplished by affording an indicted defendant a reasonable opportunity to examine the grand jury transcript for objectional matter, and, if such is found, to move the court that such matter be held from public scrutiny until after trial of the case." (*Id.* at p. 226.)

Recognizing the need for a procedure to determine whether and on what terms grand jury transcripts should be withheld from the public pending a defendant's trial, the Legislature responded to *Craemer* by amending section 938.1 in 1971 to include subdivision (b): "The [grand jury] transcript shall not be open to the public until 10 days after its delivery to the defendant or his attorney. Thereafter the transcript shall be open to the public unless the court orders otherwise on its own motion or on motion of a party pending a determination as to whether all or part of the transcript should be sealed. *If the court determines that there is a reasonable likelihood that making all or any part of the transcript public may prejudice a defendant's right to a fair and impartial trial, that part of the transcript shall be sealed until the defendant's trial has been completed.*" (Stats. 1971, ch. 1533, § 1, p. 3038; see Judicial Council of Cal., Rep. to Governor and Leg., *supra,* pp. 18–21, italics added.) With the exception of a minor, nonsubstantive change to the first sentence, the language of subdivision (b), and its reference to a reasonable likelihood of prejudice, has remained unchanged since its enactment.[2]

## C. *Constitutional Right of Access to Judicial Proceedings*

After the enactment of section 938.1, subdivision (b), the United States Supreme Court decided a series of cases recognizing that the First Amendment, in conjunction with the Fourteenth, gives the press and the public a presumed right of access to criminal trials and certain other judicial proceedings. (*Press-Enterprise II, supra,* 478 U.S. at pp. 7–8; *Press-Enterprise Co. v. Superior Court of Cal.* (1984) 464 U.S. 501, 510 [78 L.Ed.2d 629, 104 S.Ct. 819] (*Press-Enterprise I*); *Globe Newspaper Co. v. Superior Court* (1982) 457 U.S. 596, 605 [73 L.Ed.2d 248, 102 S.Ct. 2613]; *Richmond Newspapers,*

---

[2] The first sentence of section 938.1, subdivision (b), is now gender neutral: "The transcript shall not be open to the public until 10 days after its delivery to the defendant or the defendant's attorney."

*Inc. v. Virginia* (1980) 448 U.S. 555, 575 [65 L.Ed.2d 973, 100 S.Ct. 2814].) This right is implicit in the enumerated First Amendment rights of speech, press and assembly, which "share a common core purpose of assuring freedom of communication on matters relating to the functioning of government." (*Richmond Newspapers, Inc. v. Virginia, supra*, 448 U.S. at p. 575.)

The constitutional right of access to judicial proceedings is not absolute. The publicity generated by such access can sometimes jeopardize a criminal defendant's right to a fair trial by exposing jurors or prospective jurors to prejudicial and inadmissible information about the case. (See *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1021–1022 [27 Cal.Rptr.3d 596].) The First Amendment does not trump the duty of a trial judge to "control adverse publicity to protect the right of an accused to a fair trial." (*In re Willon* (1996) 47 Cal.App.4th 1080, 1093 [55 Cal.Rptr.2d 245].) A court faced with an access claim that has the potential to infect the fairness of legal proceedings must perform the difficult task of balancing these respective constitutional interests: " '[F]ree speech and fair trials are two of the most cherished policies of our civilization, and it [is] a trying task to choose between them.' " (*People v. Jackson, supra*, 128 Cal.App.4th at p. 1021, citing *Bridges v. California* (1941) 314 U.S. 252, 260 [86 L.Ed. 192, 62 S.Ct. 190].)

When the press and public have a First Amendment right of access to a particular type of judicial proceeding, it "cannot be closed unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " (*Press-Enterprise II, supra*, 478 U.S. at pp. 13–14.) In cases where the higher value being asserted is the right of a criminal defendant to a fair trial, the defense must demonstrate that "first, there is a *substantial probability* that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." (*Id.* at p. 14, italics added.) This "substantial probability" standard is constitutionally compelled and cannot be satisfied by applying a lesser burden of proof to a party seeking closure. (See *id.* at pp. 14–15.)[3]

---

[3] In *NBC Subsidiary*, the California Supreme Court articulated the standard for assessing a First Amendment access claim as follows: the trial court "must hold a hearing and expressly find that (i) there exists an overriding interest supporting closure and/or sealing; (ii) there is a *substantial probability* that the interest will be prejudiced absent closure and/or sealing; (iii) the proposed closure and/or sealing is narrowly tailored to serve the overriding interest; and (iv) there is no less restrictive means of achieving the overriding interest." (*NBC Subsidiary, supra*, 20 Cal.4th at pp. 1217–1218, italics added.) The standard of *NBC Subsidiary* was incorporated into the California Rules of Court as the standard required for the filing of court records under seal. (Cal. Rules of Court, rule 2.550(d) & Advisory Com. com. thereto.)

■ In *Press-Enterprise II*, the United States Supreme Court established a two-part test for determining whether a First Amendment right of access attaches to a particular judicial proceeding. The first consideration is "whether the place and process have historically been open to the press and general public." (*Press-Enterprise II, supra*, 478 U.S. at p. 8.) The second is "whether public access plays a significant positive role in the functioning of the particular process in question." (*Ibid.*) The court has utilized this analysis to extend the right of access to several phases of a criminal case: the trial itself (*Globe Newspaper Co. v. Superior Court, supra*, 457 U.S. at pp. 605–606), including those phases of the trial that involve sensitive matters such as the testimony of a minor victim (*id.* at p. 605, fn. 13), voir dire (*Press-Enterprise I, supra*, 464 U.S. at pp. 511–512), motions to suppress evidence (*Waller v. Georgia* (1984) 467 U.S. 39, 46–47 & fn. 6 [81 L.Ed.2d 31, 104 S.Ct. 2210] [recognizing right under Sixth Amendment public trial provision, but applying same standard as First Amendment right of access cases]) and preliminary hearings (*Press-Enterprise II, supra*, 478 U.S. at p. 12). The California Supreme Court has extended the right of public access to civil trials as well. (*NBC Subsidiary, supra*, 20 Cal.4th at pp. 1209–1210.)

Unlike preliminary hearings, for example, grand jury proceedings have traditionally been held outside the public view. (§ 915; *Press-Enterprise II, supra*, 478 U.S. at pp. 8–9; *McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1172–1173 [245 Cal.Rptr. 774, 751 P.2d 1329].) Originally intended to prevent the escape of offenders, this practice serves to protect witnesses, encourage candid testimony, preserve the impartiality of grand jurors, and maintain the reputations of persons who are not ultimately indicted. (*Daily Journal Corp. v. Superior Court, supra*, 20 Cal.4th at pp. 1126–1127.) "Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye. [Citation.] The rule of grand jury secrecy was imported into our federal common law and is an integral part of our criminal justice system. [Citations.]" (*Douglas Oil Co. v. Petrol Stops Northwest* (1979) 441 U.S. 211, 218, fn. 9 [60 L.Ed.2d 156, 99 S.Ct. 1667].)

Because they have been historically closed and because their functioning depends upon secrecy, the press and public do not have a First Amendment right to attend grand jury proceedings. (*Press-Enterprise II, supra*, 478 U.S. at pp. 8–9; *Los Angeles Times v. Superior Court* (2003) 114 Cal.App.4th 247, 256 [7 Cal.Rptr.3d 524].) "Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that 'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.' " (*Press-Enterprise II, supra*, at pp. 8–9.)

Nor does the Constitution require access to the transcripts of grand jury proceedings that have been completed. In *Daily Journal Corp. v. Superior Court, supra,* 20 Cal.4th 1117, the press unsuccessfully sought access to the transcripts of criminal grand jury proceedings that had ended without an indictment. The court concluded that absent a specific statutory provision authorizing the release of the transcripts, there was no right of access. (*Id.* at pp. 1123–1124.) The court explained, "Media entities also contend that the policies behind the constitutional and common law rights of public access to pretrial proceedings and records that exist with respect to preliminary hearings also support a conclusion that once a grand jury investigation is complete, its records should be subject to public scrutiny. They are unpersuasive. Transcripts of grand jury testimony, unlike testimony before a court in pretrial proceedings, are not public records. As stated in *McClatchy*, 'the important public interests requiring [the grand jury's] institutional secrecy persuade us that the Legislature must have intended the grand jury to be . . . exempted from the [California Public Records] Act's provisions.' (*McClatchy Newspapers v. Superior Court, supra,* 44 Cal.3d at p. 1183; see also *Press-Enterprise Co. v. Superior Court*[, *supra,* 22 Cal.App.4th at p.] 505, fn. 5 . . . ['grand jury proceedings themselves are not open to the public and no public right of access attaches, but once an indictment has been returned section 938.1 . . . implicitly recognizes the public's qualified right of access to the record of those proceedings'].)" (*Daily Journal Corp. v. Superior Court, supra,* 20 Cal.4th at p. 1132.)

D. *Interplay Between Section 938.1 and the First Amendment Right of Access*

Mercury News argues that because California has historically allowed public access to grand jury transcripts after an indictment has issued, the First Amendment prevents the sealing of those transcripts unless the accused demonstrates a "substantial probability" of prejudice as articulated in *Press-Enterprise II.* The trial court agreed, concluding that section 938.1, subdivision (b), was unconstitutional to the extent it allowed the transcripts to be sealed by showing prejudice under the lesser "reasonable likelihood" standard. (See *Press-Enterprise III, supra,* 22 Cal.App.4th at p. 503, fn. 2.)[4] We are not similarly persuaded.

---

[4] "Reasonable likelihood" is not defined in section 938.1, subdivision (b), but in the context of a motion under section 1033, which requires a change of venue when there is a "reasonable likelihood that a fair and impartial trial cannot be held in the county," it has been construed to mean something less than " ' "more probable than not," ' " yet greater than something that is " 'merely "possible." ' " (*People v. Proctor* (1992) 4 Cal.4th 499, 523 [15 Cal.Rptr.2d 340, 842 P.2d 1100].) The same definition extends to section 938.1. (See *Rosato v. Superior Court* (1975) 51 Cal.App.3d 190, 208 [124 Cal.Rptr. 427].)

As a threshold matter, we observe that the United States Supreme Court has not specifically extended the First Amendment right of access beyond judicial proceedings to judicial records such as grand jury transcripts, although it has recognized a common law right of access to judicial records. (*Nixon v. Warner Communications, Inc.* (1978) 435 U.S. 589, 597 [55 L.Ed.2d 570, 98 S.Ct. 1306].) Courts in this state are divided on the question. (Compare *KNSD Channels 7/39 v. Superior Court* (1998) 63 Cal.App.4th 1200, 1203 [74 Cal.Rptr.2d 595] [access to judicial records is common law rather than constitutional right] with *NBC Subsidiary, supra,* 20 Cal.4th at pp. 1208–1209, fn. 25 [noting in dicta that courts have found First Amendment right of access to civil litigation documents filed in court as basis for adjudication], *Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 596 [57 Cal.Rptr.3d 215] [public has First Amendment right to access civil litigation documents filed in court and used at trial or submitted as basis for adjudication], *People v. Jackson, supra,* 128 Cal.App.4th at p. 1021 [First Amendment recognizes a general right to inspect and copy judicial documents], *Copley Press, Inc. v. Superior Court* (1992) 6 Cal.App.4th 106, 111 [7 Cal.Rptr.2d 841] [First Amendment provides broad access to judicial records] and *People v. Connor* (2004) 115 Cal.App.4th 669, 693–694 [9 Cal.Rptr.3d 521] [noting issue and conducting First Amendment analysis].) We assume, without deciding, that the public and press have a First Amendment right to review judicial records when those records otherwise meet the criteria for public access. (See *In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045, 1061 [37 Cal.Rptr.3d 805].)

■ In determining whether the public and press have a First Amendment right to access grand jury transcripts after an indictment issues, we begin with the premise—undisputed by Mercury News—that there is no right of contemporaneous access to grand jury proceedings themselves. (*Press-Enterprise II, supra,* 478 U.S. at pp. 8–9.) Similarly, the public has had no common law or First Amendment right of access to grand jury transcripts. In the absence of a statute allowing their release, the public has had no access to such transcripts. (See *Times Mirror Co. v. U.S.* (9th Cir. 1989) 873 F.2d 1210, 1219; *Globe Newspaper Co. v. Pokaski* (1st Cir. 1989) 868 F.2d 497, 509–510.) " '[G]rand jury secrecy is the rule and openness the exception, permitted only when specifically authorized by statute.' " (*Daily Journal Corp., supra,* 20 Cal.4th at p. 1126.) Despite the qualified right of access under section 938.1, "[t]ranscripts of grand jury testimony, unlike testimony before a court in pretrial proceedings, are not public records." (*Daily Journal Corp., supra,* at p. 1132.)

■ By enacting section 938.1 and its progenitor, former section 925, the California Legislature statutorily granted the public greater access rights to postindictment grand jury transcripts than required under common law or the constitution. This limited statutory right of access is subject to section 938.1, subdivision (b), which protects the defendant's rights by requiring notice and

providing a 10-day period for seeking an order sealing the transcripts when necessary to prevent an unfair trial. The showing necessary to seal the transcripts under section 938.1, subdivision (b)—a reasonable likelihood of prejudice to the defendant's fair trial rights—is the same as that utilized by the United States Supreme Court to resolve the related question of whether pretrial news coverage requires a continuance or change of venue to protect the defendant's right to a fair trial. (See *Sheppard v. Maxwell* (1966) 384 U.S. 333, 362–363 [16 L.Ed.2d 600, 86 S.Ct. 1507].) The reasonable likelihood standard has not been disapproved by the United States Supreme Court in that context and has been incorporated in California into section 1033, which governs motions for a change in venue.

California's practice of releasing postindictment grand jury transcripts when there is no reasonable likelihood of prejudice does not transmogrify a purely statutory right of access into a constitutional entitlement. Rather, the statutory right of access, which is not otherwise constitutionally compelled, is contingent upon a lack of prejudice to the defendant. Because the state is not constitutionally required to provide public access to the transcripts at all, it is free to establish a standard of prejudice that is more protective of a criminal defendant's rights than the "substantial probability" standard that applies when the First Amendment rights of a third party are at stake.

The test for access claims that was articulated in *Press-Enterprise II* requires us to consider "whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." (*Press-Enterprise II, supra*, 478 U.S. at p. 8.) Grand jury proceedings themselves "fail both steps in this two-part test and, as a result, the usual presumption of access is reversed." (*Los Angeles Times v. Superior Court, supra*, 114 Cal.App.4th at p. 256.) "Historically, such proceedings have been closed to the public. Moreover, public access to grand jury proceedings would hinder, rather than further, the efficient functioning of the proceedings." (*U.S. v. Smith* (3d Cir. 1997) 123 F.3d 140, 148.)

We reach the same conclusion with respect to the grand jury transcripts when sought under section 938.1. First, while California has for many years released such transcripts after an indictment has issued, since 1971 this practice has been expressly limited by statute to cases in which there is no reasonable likelihood of prejudice to the defendant. And, as evidenced by the trial court's ruling in *Craemer v. Superior Court, supra*, 265 Cal.App.2d at page 218, courts faced with issues of prejudicial pretrial publicity have, even before the establishment of the reasonable likelihood standard, sealed postindictment transcripts where necessary to protect the fair trial rights of the

defendant. Thus, grand jury transcripts have never been presumptively accessible in cases where a reasonable likelihood of prejudice exists. Access is grounded in a legislatively granted qualified right and not in common law or historical practice.

Second, the pretrial release of grand jury transcripts cannot play a significant, positive role in the functioning of the grand jury or the subsequent criminal proceedings when there is a reasonable likelihood of prejudice to the defendant's fair trial rights. The interests in grand jury secrecy, although reduced, are not necessarily eliminated merely because the grand jury has ended its activities. The knowledge that the public will eventually have access to the transcripts does tend to foster fairness in grand jury proceedings, but this goal is accomplished even in cases where the transcripts are temporarily sealed to protect the defendant's right to a fair trial. Section 938.1, subdivision (b), does not prevent the release of the transcripts for all time; it merely delays public access to testimony judicially determined to be prejudicial until the defendant's trial has been completed because to do otherwise would be prejudicial to the defendant's right to a fair trial.

■ We emphasize that we are dealing with a request to seal the transcripts that was not tethered to any other motion or adjudicatory event. Were defendant asking the court to maintain the transcripts under seal while simultaneously bringing a motion or seeking other relief dependent on the content of the transcripts, the considerations under *Press-Enterprise II* could be different and might require recognition of a First Amendment right. (See *People v. Jackson, supra*, 128 Cal.App.4th at pp. 1027–1028 [conducting First Amendment review of order sealing transcripts in conjunction with motion to set aside the indictment].) But when the only issue before the court is whether grand jury transcripts should be sealed until the completion of the trial, the public and press have only a limited, statutory right of access and the First Amendment does not require application of a more stringent standard of prejudice than the "reasonable likelihood" test under section 938.1, subdivision (b).

E. *Proposition 59*

Mercury News argues that a state constitutional right of access to grand jury transcripts was created by Proposition 59, which was approved by the voters in November 2004 and amended the California Constitution to add article I, section 3, subdivision (b): "(1) The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny. [¶] (2) A statute, court rule, or other

authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access. . . ."

The amendments under Proposition 59 do not affect our interpretation of section 938.1. Article I, section 3, subdivision (b)(5) of the California Constitution, provides, "This subdivision does not repeal or nullify, expressly or by implication, any constitutional or statutory exception to the right of access to public records or meetings of public bodies that is in effect on the effective date of this subdivision . . . ." Even if we assume that a grand jury transcript is a "public record" within the meaning of article I, section 3, subdivision (b), section 938.1 is a statute that provides an exception to the right to access postindictment transcripts when there is a reasonable likelihood of prejudice to the defendant. As such, section 938.1 was not repealed or nullified by Proposition 59.

■ To the extent Proposition 59 requires us to liberally construe section 938.1 to further the people's right of access to grand jury transcripts (Cal. Const, art. I, § 3, subd. (b)(2)), we have no power to disregard the plain language of the statute, which requires that access be delayed until the completion of trial when there is a reasonable likelihood of prejudice to the defendant's right to a fair trial. Rewriting section 938.1 to require a "substantial probability" of prejudice goes far beyond a liberal construction of its terms when that higher standard is not mandated by the federal constitution.

## F. *Prejudice*

■ Having concluded that the trial court should have applied the reasonable likelihood standard of section 938.1, subdivision (b), rather than the substantial probability standard of the First Amendment access cases, we consider whether the error affected the outcome of the motion to seal. Although Mercury News argues that the evidence presented by defendant did not even show a reasonable likelihood of prejudice, the trial court stated on the record that if the lower reasonable likelihood standard were required by law, it would have to "reevaluate" its ruling. The outcome of the motion hinged on the credibility and persuasiveness of defendant's two expert witnesses, findings of fact that are best made by the trial court in the first instance. (See *People v. Jackson, supra,* 128 Cal.App.4th at p. 1021 [though Court of Appeal independently reviews order unsealing grand jury transcripts and related documents, credibility determinations are best made by the trial court and are reviewed for substantial evidence].) Accordingly, we remand the case to the trial court for reconsideration of defendant's motion to seal.

## III. DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order (1) denying defendant's motion to seal the grand jury transcripts until after the completion of his trial and (2) granting Mercury News's motion to unseal the grand jury transcripts. Thereafter, the superior court is directed to reconsider the motions using the "reasonable likelihood" standard of prejudice in Penal Code section 938.1, subdivision (b). The documents at issue shall remain under seal pending such reconsideration.

Stein, J., and Swager, J., concurred.

On August 27, 2007, the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied November 28, 2007, S156887.