Filed 12/31/24  P. v. Smith CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C099969 |
| Plaintiff and Respondent, | (Super. Ct. No. 23CF03571) |
| v. | |
| DILLION ANTHONY SMITH, | |
| Defendant and Appellant. | |

Defendant Dillion Anthony Smith appeals from a judgment following his no contest plea to battery with serious bodily injury. Defendant argues the trial court failed to exercise its discretion by expressly denying his request for diversion and that any implied denial of his request was not supported by substantial evidence. Finding no merit to these contentions, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2023, while on a parole hold in jail, defendant and an accomplice attacked another inmate. The accomplice punched the victim from behind, hitting him on

1

the side of the head, causing the victim to fall to the ground. As the victim lay unconscious on the ground, defendant punched the victim in the face four times and kicked his head twice. The victim suffered multiple lacerations and bruises on his face and lost a significant amount of blood.

A complaint charged defendant with one count of battery with serious bodily injury and with assault by means of force likely to produce great bodily injury. The complaint alleged a prior strike and a prior serious felony. Defendant pled no contest to the assault charge and waived his right to have aggravating circumstances determined at a jury or court trial.

The trial court referred defendant to the Far Northern Regional Center to evaluate and provide a report on whether he qualified for diversion. The report stated defendant was eligible for diversion and treatment based on a cognitive developmental disability. However, the report noted defendant had been noncompliant with the terms of his parole, which resulted in several parole violations and defendant serving additional time in jail. The report also indicated that the Far Northern Regional Center was unable to provide defendant with housing services, which would result in defendant becoming homeless after his release from jail. For these reasons, the report concluded defendant was not a good candidate for diversion.

Defendant argued he should be placed in a diversion program because the report determined he was eligible. Defendant asserted that the Far Northern Regional Center's determination that he was not suitable for diversion was outside the scope of their statutory obligation. Defendant further argued that the Far Northern Regional Center had a duty to provide him with an individualized program even though he struggled with behavioral issues because they were directly related to his cognitive developmental disability.

The probation report characterized defendant's underlying battery offense as "more serious than other instances of the same crime" because the victim was

unconscious and particularly vulnerable. The report also detailed defendant's criminal history. Defendant was convicted of willful infliction of corporal injury in 2015 and granted three years of probation. From 2015 through 2019 defendant committed eight probation violations. After the first four violations, he was sent to prison for two years. Once released, he violated probation four more times and served additional jail time. While on postrelease community supervision in 2019, defendant was convicted of unlawful sexual intercourse with a minor and possession of child pornography and sentenced to three years eight months. After he was released on parole in 2021, he violated parole 13 more times. During that time, the trial court referred him to community-based coalition programs five times, referred him to residential treatment once, and sent him to jail seven times.

The probation report indicated defendant suffered a traumatic brain injury in 2019; was born with fetal alcohol syndrome; and was diagnosed with developmental disability, attention deficit hyperactivity disorder, posttraumatic stress disorder, anxiety, obsessive-compulsive disorder, depression, and schizoaffective disorder. Defendant told the probation officer that he was not taking his medicine when he attacked the victim and admitted that despite his mental disability, he knew it was " 'not okay to punch someone.' " Defendant admitted he was on parole when the underlying offense occurred and that he previously sustained multiple parole violations.

The probation report stated defendant was forthcoming about his substance abuse and indicated he was willing to participate in counseling. However, the report also stated in 2023 he was terminated from a substance abuse program for failing to obey the rules. Despite defendant's expressed willingness to comply with probation, the report indicated defendant did not have the ability to comply because of his substance abuse problem and his poor performance on probation and parole. The report recommended the trial court deny probation and impose the upper term sentence based on the relevant aggravating and mitigating factors.

At sentencing, the trial court said it reviewed the report from the Far Northern Regional Center and the probation report, as well as defendant's response to the Far Northern Regional Center report. After argument from the parties on whether it should grant diversion, the court deemed the matter submitted and proceeded with sentencing.

The trial court found the case was not unusual and denied probation. In mitigation, the court found "[d]efendant may have been suffering from a mental or physical condition that significantly reduced his culpability" for the underlying crime. In aggravation, the trial court found defendant's prior convictions were numerous and increasing in seriousness, defendant had served a prior prison term, defendant was on parole when arrested for the current offense, his prior performance on probation and parole was unsatisfactory, the underlying crime involved great violence and great bodily harm, the victim was particularly vulnerable because he was unconscious, and defendant's conduct indicated he was "a serious danger to society." The court sentenced defendant to the middle term sentence of three years.

Defendant appeals.

DISCUSSION

Defendant claims the trial court abused its discretion by denying his request for diversion. The People respond that the court made an implied finding defendant would not benefit from diversion. Defendant replied arguing that if the court implicitly found he posed an unreasonable risk of danger to public safety or would not benefit from diversion under Penal Code[1] section 1001.23, that finding was not supported by substantial evidence. We disagree and conclude that there was no abuse of discretion and that substantial evidence supports the trial court's implied finding.

---

[1]     Undesignated statutory references are to the Penal Code.

4

If a defendant consents to the process for diversion based on a cognitive developmental disability, "the [trial] court shall order the prosecutor, the probation department, and the regional center to prepare reports on specified aspects of the defendant's case." (§ 1001.22, subd. (a).) For any defendant who satisfies the eligibility requirements of section 1001.23, the court must then determine whether the defendant is suitable for pretrial diversion. (§ 1001.23, subd. (a).) The parties do not dispute defendant was eligible for diversion based on a cognitive developmental disability. After considering the reports, "defendant's violence and criminal history, the relationship of the [cognitive] developmental disability to the charged offense, and the current charged offense, and any other relevant information," the court must determine if the defendant will pose an unreasonable risk of danger to public safety, as defined in section 1170.18. (§ 1001.23, subd. (b).) If the court finds defendant will not pose an unreasonable risk of danger to public safety, it then decides whether the defendant will benefit from diversion. (*Ibid.*) If the court does not determine the defendant would benefit from diversion, it may reinstitute the criminal proceedings. (*Ibid.*)

A trial court has broad discretion to determine whether a given defendant is a good candidate for diversion. (§ 1001.36, subd. (a); see *People v. Moine* (2021) 62 Cal.App.5th 440, 448 [interpreting prior version of § 1001.36].) Generally, a trial court's ruling on diversion is reviewed for an abuse of discretion, and factual findings are reviewed for substantial evidence. (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147 [abuse of discretion standard applies to mental health diversion decision under § 1001.36]; *People v. Frahs* (2020) 9 Cal.5th 618, 626 [implying that a court may exercise its discretion to deny an eligible defendant mental health diversion]; *Moine*, at pp. 448-449 [abuse of discretion standard applies to a finding of danger to public safety, as defined in § 1170.18, when a trial court considers diversion under § 1001.36].)

A trial court's express or implied findings must be supported by sufficient evidence. (*People v. Moine*, *supra*, 62 Cal.App.5th at p. 449.) If the trial court has based

5

its discretionary determination on factual findings that have no sufficient support under the substantial evidence standard, then an abuse of discretion results. (*Ibid.*; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1080.) "This standard involves abundant deference to the trial court's rulings." (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.)

In determining whether to grant diversion for cognitive developmental disabilities, the trial court must decide whether defendant poses an "unreasonable risk of danger to public safety" as defined in section 1170.18 (§ 1001.23, subd. (b)), which states the trial court must find "an unreasonable risk that the [defendant] will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of [s]ection 667" (§ 1170.18, subd. (c)). The offenses contemplated in this definition "are known as 'super strikes' and include murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, and any serious or violent felony punishable by death or life imprisonment." (*People v. Jefferson* (2016) 1 Cal.App.5th 235, 242.) It also includes sexually violent offenses and sexual offenses committed against minors under the age of 14. (§ 667, subd. (e)(2)(C)(iv)(I)-(III).)

"Section 1001.23's reliance on the definition of dangerousness in section 1170.18, [subdivision (c),] necessarily encompasses the list of super strike offenses found at section 667, subdivision (e)(2)(C)(iv). By requiring an assessment of whether the defendant 'will commit a new violent felony' within the meaning of section 667, subdivision (e)(2)(C)(iv), a trial court necessarily must find the defendant is 'likely to commit a super-strike offense.' " (*People v. Moine*, *supra*, 62 Cal.App.5th at pp. 449-450 [interpreting § 1101.36's reliance on the § 1170.18's " 'unreasonable risk of danger to public safety' " definition], citing to *People v. Hoffman* (2015) 241 Cal.App.4th 1304, 1310 [reviewing a finding of unreasonable danger to public safety under § 1170.18].)

We conclude the trial court did not abuse its discretion in denying diversion. The court requested, reviewed, and considered both the Far Northern Regional Center and the

6

probation reports, as required by section 1001.23. It also read and considered defendant's response to the Far Northern Regional Center report. It heard the parties' arguments on diversion and took the matter under submission. The court then reinstituted the criminal proceedings by denying probation and sentencing defendant, indicating that it made an implied finding that defendant posed an unreasonable risk of danger to public safety. (§ 1001.23, subd. (b).) By reinstituting the criminal proceedings, the court impliedly—but sufficiently—rendered a finding that defendant posed an unreasonable risk to public safety. (See *People v. Clair* (1992) 2 Cal.4th 629, 691, fn. 17.) Although the trial court did not make a record of its ruling denying diversion, it was not required to do so under section 1001.23. Thus, we must presume the court followed the law and made the required findings even though impliedly. (*People v. Thomas* (2011) 52 Cal.4th 336, 361 ["In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law' "].)

Further, we conclude that substantial evidence supports the implied finding that defendant was an unreasonable risk to public safety if the trial court granted diversion.

Given the increasing seriousness of defendant's past offenses and the violent nature of the underlying offense, which is defined as a "serious felony" under section 1192.7, subdivision (c)(8), substantial evidence supports a finding that defendant would be an unreasonable risk to public safety as defined in section 1170.18.

Defendant violently punched and kicked an unconscious victim multiple times, inflicting great bodily harm. Defendant's conduct was "more serious than other instances of the same crime" because the victim was particularly vulnerable. At sentencing, when considering which term to impose, the trial court found defendant's conduct in the underlying case indicated he was "a serious danger to society." Based on the evidence considered by the court, it reasonably found defendant was likely to commit a super strike offense and did not abuse its discretion in denying diversion.

7

DISPOSITION

The judgment is affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
KRAUSE, J.

/s/
WISEMAN, J.*

---

*       Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.